# United States Court of Appeals
## For the Eighth Circuit

———————————————

No. 16-3275

———————————————

Catamaran Corporation

*Plaintiff - Appellant*

v.

Towncrest Pharmacy; Clark's Pharmacy; Meyer's Healthmart Pharmacy; Osterhaus Pharmacy

*Defendants - Appellees*

————————

Appeal from United States District Court
for the Southern District of Iowa - Des Moines

————————

Submitted: April 6, 2017
Filed: July 28, 2017

————————

Before SMITH, Chief Judge, SHEPHERD, Circuit Judge, and FENNER,[1] District
Judge.

————————

SHEPHERD, Circuit Judge.

This case presents a question of first impression in this circuit: whether a court
or an arbitrator should determine whether an arbitration agreement authorizes class

———

[1]The Honorable Gary A. Fenner, United States District Judge for the Western
District of Missouri, sitting by designation.

arbitration. After reviewing relevant Supreme Court precedent and the opinions of our sister circuits, we hold that a court must decide the question because of the fundamental differences between bilateral and class arbitration.

## I.

Catamaran Corp.[2] operates as a pharmacy benefit manager. It contracts with entities that sponsor, administer, or otherwise participate in prescription drug benefit plans. Among the services Catamaran provides is reimbursing pharmacies who furnish prescription drugs to individuals covered by such a plan. The defendants in this case are four pharmacies who have agreements with Catamaran for reimbursements.

There are two relevant agreements here.[3] One agreement was with SXC Health Solutions Corp., a predecessor in interest to Catamaran. The other agreement was with Catalyst Health Solutions, Inc., also a predecessor in interest to Catamaran. Each of the four pharmacies were parties to these agreements, which were brokered on their behalf by AccessHealth, a pharmacy services administration organization comprised of some 85 independent pharmacies. AccessHealth acted as the attorney-in-fact for the pharmacies in these two agreements.

The SXC Agreement contains an arbitration provision stating that if "any disputes arising during the term of this Agreement" cannot be resolved informally, then "either party may submit the dispute to binding arbitration in accordance with

---

[2]Catamaran has since been acquired by another pharmacy benefit manager, OptumRx.

[3]The parties disagree as to which agreement controls; Catamaran argues that the SXC Agreement controls, while the pharmacies believe the Catalyst Agreement governs. Our analysis is the same regardless, so we discuss both agreements.

the Rules for the Conduct of Arbitration of the American Arbitration Association [AAA] . . . in effect at the date of commencement of such arbitration." The Catalyst Agreement contains a similar provision: "Any controversy or claim arising out of or relating to this Agreement shall be settled by arbitration in accordance with the applicable rules of the [AAA]." Neither agreement uses the word "class" or refers to class arbitration. The AAA Supplementary Rules for Class Arbitration permit class arbitration and give arbitrators the power to decide whether an agreement contemplates class arbitration.

Eventually, a dispute arose between Catamaran and the four pharmacies. The pharmacies filed a demand for class arbitration with the AAA, asserting claims on behalf of themselves and similarly situated independent pharmacies—a class of over 85 pharmacies.

Catamaran responded by filing a declaratory judgment action under 28 U.S.C. § 2201 and the Federal Arbitration Act (FAA) in the district court. Catamaran sought declaratory relief and an injunction preventing the pharmacies from proceeding with class arbitration. Catamaran then moved for summary judgment, arguing that the relevant agreements do not permit the pharmacies to proceed to arbitration as a class. Rather, Catamaran contends that each pharmacy must engage Catamaran in bilateral arbitration proceedings.

After oral arguments, the district court denied Catamaran's motion for summary judgment. The court viewed the issue before it as twofold: (1) whether the availability of class arbitration is a substantive or a procedural question; and (2) whether the agreements clearly and unmistakably commit the class arbitration question to an arbitrator. On the first question, the court recognized that the Eighth Circuit has yet to offer an answer. The court surveyed case law from around the country but ultimately did not make any determination on this question. Instead, the court answered the second question in the affirmative. Relying on Eighth Circuit

precedent analyzing bilateral arbitration, the court held that the agreements' reference to the AAA rules was a clear and unmistakable commitment for an arbitrator to decide whether the agreements contemplate class arbitration. Catamaran appeals.

## II.

We review de novo a district court's order on a motion for summary judgment. See Lamoureux v. MPSC, Inc., 849 F.3d 737, 739 (8th Cir. 2017).

## A.

Under the FAA, arbitration agreements are deemed "valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. But the FAA also imposes a basic principle: arbitration is a process of consent and not coercion. See Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp., 559 U.S. 662, 681 (2010). "[A]rbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." Howsam v. Dean Witter Reynolds, Inc., 537 U.S. 79, 83 (2002) (internal quotation marks omitted). Courts must therefore play a threshold role to determine "whether the parties have submitted a particular dispute to arbitration." Id.

These threshold or gateway issues are called substantive questions of arbitrability. Substantive questions include "whether the parties have a valid arbitration agreement at all or whether a concededly binding arbitration clause applies to a certain type of controversy." Green Tree Fin. Corp. v. Bazzle, 539 U.S. 444, 452 (2003). Courts presume that substantive questions are "for judicial determination [u]nless the parties clearly and unmistakably provide otherwise." Howsam, 537 U.S. at 83 (alteration in original) (internal quotation marks omitted). Because arbitration is about consent of the parties, we "hesitate to interpret silence or ambiguity" in an

agreement as grounds for committing such important questions to an arbitrator. See First Options of Chi., Inc. v. Kaplan, 514 U.S. 938, 945 (1995).

Many questions that arise in the arbitration context are procedural or subsidiary questions that courts presume an arbitrator may decide. Howsam, 537 U.S. at 84. "Procedural questions arise once the obligation to arbitrate a matter is established, and may include such issues as the application of statutes of limitations, notice requirements, laches, and estoppel." Dell Webb Cmtys., Inc. v. Carlson, 817 F.3d 867, 873 (4th Cir.), cert. denied sub nom. Carlson v. Dell Webb Cmtys., Inc., 137 S. Ct. 567 (2016). These are questions for an arbitrator both because the parties would most likely expect an arbitrator to decide them, see Howsam, 537 U.S. at 84, and because they do not challenge the arbitrator's underlying authority, see AT&T Techs., Inc. v. Commc'ns Workers of Am., 475 U.S. 643, 648-49 (1986).

B.

The first issue we must determine is whether the question of class arbitration is substantive in nature, and hence one for the court to decide absent clear and unmistakable language to the contrary, or procedural in nature and presumably for an arbitrator to decide.

The Supreme Court has not offered a definitive answer on this question. At one time, a plurality of the Court held that class arbitration was a procedural question for an arbitrator because "it concerns neither the validity of the arbitration clause nor its applicability to the underlying dispute between the parties." See Bazzle, 539 U.S. at 452. Instead, the plurality considered class arbitration simply a matter of "contract interpretation and arbitration procedures." Id. at 453. The plurality, we can safely assume, did not believe class arbitration affected or changed the underlying dispute. In later cases, however, the Supreme Court disavowed the Bazzle plurality's decision. In Stolt-Nielsen, the Court admonished the parties not to assume that arbitrators

should decide whether a contract permitted class arbitration; "[i]n fact, however, only the [Bazzle] plurality decided that question." 559 U.S. at 680. And in Oxford Health Plans, LLC v. Sutter, the Court stated emphatically that it "has not yet decided whether the availability of class arbitration" is a procedural or substantive question of arbitrability. 133 S. Ct. 2064, 2068 n.2 (2013).

But recent cases have strongly hinted at the Supreme Court's ultimate conclusion: the question of class arbitration is substantive in nature and requires judicial determination. See Carlson, 817 F.3d at 875 ("The evolution of the Court's cases are but a short step away from the conclusion that whether an arbitration agreement authorizes class arbitration presents a question as to the arbitrator's inherent power, which requires judicial review."); Reed Elsevier, Inc. ex rel. LexisNexis Div. v. Crockett, 734 F.3d 594, 598 (6th Cir. 2013) ("[R]ecently the Court has given every indication, short of an outright holding, that classwide arbitrability is a gateway question rather than a subsidiary one."). To that predicted end, the Court has identified a number of fundamental differences between bilateral and class arbitration suggesting that the question of whether an agreement permits class arbitration is reserved for the courts to decide.

First, the benefits of arbitration are substantially lessened in a class arbitration proceeding. See Stolt-Nielsen, 559 U.S. at 685. "In bilateral arbitration, parties forgo the procedural rigor and appellate review of the courts in order to realize the benefits of private dispute resolution: lower costs, greater efficiency and speed, and the ability to choose expert adjudicators to resolve specialized disputes." Id. But "the switch from bilateral to class arbitration sacrifices the principal advantage of arbitration—its informality—and makes the process slower, more costly, and more likely to generate procedural morass than final judgment." AT&T Mobility LLC v. Concepcion, 563 U.S. 333, 348 (2011). The benefits are lost because class arbitration requires the kind of procedural formality seen in class-action litigation. Id. at 349 (commenting that

the AAA Supplementary Rules for Class Arbitration "mimic the Federal Rules of Civil Procedure for class litigation").

Second, confidentiality is lost or becomes more difficult. Stolt-Nielsen, 559 U.S. at 686. "Under the Class Rules, the presumption of privacy and confidentiality that applies in many bilateral arbitrations shall not apply in class arbitrations." Id. (internal quotation marks omitted). Again, this is so because class arbitration requires procedural formalities similar to class-action suits. But the loss of confidentiality "potentially frustrat[es] the parties' assumptions when they agreed to arbitrate." Id.

Third, class arbitration brings the bet-the-company stakes of class-action litigation into the realm of arbitration without the safety net of multilayered judicial review. Id. at 686-87. In class-action litigation, multilayered judicial review is available, and appellate courts review questions of law de novo. See Carlson, 817 F.3d at 875. But under the FAA, courts have limited grounds to vacate or even modify an arbitration award. See 9 U.S.C. §§ 9, 10. "The absence of multilayered review makes it more likely that errors will go uncorrected. Defendants are willing to accept the costs of these errors in arbitration, since their impact is limited to the size of individual disputes, and presumably outweighed by savings from avoiding the courts." Concepcion, 563 U.S. at 350. Class arbitration, on the other hand, aggregates many disputes, significantly raising the costs and risks to defendants, while still allowing errors to go uncorrected in multilayered judicial review. We doubt that defendants would contractually agree to "bet the company with no effective means of review." Id. at 351. "Thus, in sum, '[a]rbitration is poorly suited to the higher stakes of class litigation.'" Crockett, 734 F.3d at 598 (quoting Concepcion, 563 U.S. at 350).

Fourth, class arbitration raises important due process concerns. See Stolt-Nielsen, 559 U.S. at 686. In class arbitration, "[t]he arbitrator's award no longer purports to bind just the parties to a single arbitration agreement, but adjudicates the

-7-

rights of absent parties as well." Id. In that situation, absent parties "must be afforded notice, an opportunity to be heard, and a right to opt out of the class." Concepcion, 563 U.S. at 349. These formalities further raise the costs and reduce the efficiency of arbitration. And if we were to dispense with such formalities, "absent class members would not be bound by the arbitration," leaving defendants open to further arbitration actions. Id.

After considering all of these fundamental differences, we conclude that the question of class arbitration belongs with the courts as a substantive question of arbitrability. See Carlson, 817 F.3d at 877; Opalinski v. Robert Half Int'l Inc., 761 F.3d 326, 334 (3d Cir. 2014); Crockett, 734 F.3d at 599. The answer to this question will change the very nature of the underlying controversy. For "whether the parties arbitrate one claim or 1,000 in a single proceeding is no mere detail." Crockett, 734 F.3d at 598. And questions concerning "whether the parties have submitted a particular dispute to arbitration" presumptively lie with the court. See Howsam, 537 U.S. at 83.

C.

Even though we presume the question of class arbitration lies with the courts, parties to an agreement may nonetheless commit the question to an arbitrator. Id. This highlights the contractual nature of arbitration—"the parties' intentions control." Stolt-Nielsen, 559 U.S. at 682 (internal quotation marks omitted). To overcome the presumption, the parties must clearly and unmistakably delegate the question to an arbitrator. See Howsam, 537 U.S. at 83.

Looking at the SXC and Catalyst Agreements, we see no mention of class arbitration. Each agreement states that any dispute or controversy that arises out of the agreement shall be resolved by arbitration under the AAA's applicable rules. But regarding class arbitration, there is complete silence. And silence is insufficient

grounds for delegating the issue to an arbitrator.  See Kaplan, 514 U.S. at 944-45; Opalinski, 761 F.3d at 335.

The pharmacies argue that the agreements' incorporation of AAA rules commits the question to an arbitrator and not the court.  They direct us to three Eighth Circuit opinions, each holding that incorporation by reference of AAA Rules constitutes a clear and unmistakable indication that the parties intended for an arbitrator to decide substantive questions of arbitrability.  See Eckert/Wordell Architects, Inc. v. FJM Props. of Willmar, LLC, 756 F.3d 1098, 1100 (8th Cir. 2014); Green v. SuperShuttle Int'l, Inc., 653 F.3d 766, 769 (8th Cir. 2011) ("By incorporating the AAA Rules, the parties agreed to allow the arbitrator to determine threshold questions of arbitrability."); Fallo v. High-Tech Inst., 559 F.3d 874, 878 (8th Cir. 2009).  These opinions, the pharmacies contend, compel the conclusion that the SXC and Catalyst Agreements leave the question of class arbitration to an arbitrator.  The district court relied on this reasoning in its order denying Catamaran's motion for summary judgment.

But, as the district court admitted, these prior opinions—Eckert/Wordell, Green, and Fallo—each dealt with bilateral arbitration agreements.  These opinions therefore never grappled with the fundamental changes in the underlying controversy that arise when dealing with class arbitration.  Accordingly, "we believe that this 'bilateral arbitration dispute case law' is entitled to relatively little weight in the class arbitrability context."  Chesapeake Appalachia, LLC v. Scout Petroleum, LLC, 809 F.3d 746, 758 (3d Cir.), cert. denied, 137 S. Ct. 40 (2016).[4]

Incorporation of AAA Rules by reference is insufficient evidence that the parties intended for an arbitrator to decide the substantive question of class

---

[4]We leave undisturbed the precedential authority of these cases in the context of bilateral arbitration disputes.

arbitration.  See Crockett, 734 F.3d at 599-600.  When dealing with class arbitration, we seek clear and unmistakable evidence of an agreement to arbitrate the particular question of class arbitration.  Chesapeake Appalachia, 809 F.3d at 761.  The risks incurred by defendants in class arbitration (bet-the-company stakes without effective judicial review, loss of confidentiality) and the difficulties presented by class arbitration (due process rights of absent class members, loss of speed and efficiency, increase in costs) all demand a more particular delegation of the issue than we may otherwise deem sufficient in bilateral disputes.  And because these agreements fail to delegate the particular issue of class arbitration, the question falls to the courts.

III.

Because the district court erred in concluding that the question of class arbitration was procedural rather than substantive, we reverse the court's order denying Catamaran's motion for summary judgment and remand for further proceedings.  The Supreme Court requires a "contractual basis" for concluding that parties have submitted to class arbitration "because class-action changes the nature of arbitration to such a degree that it cannot be presumed the parties consented to it by simply agreeing to submit their disputes to an arbitrator."  See Stolt-Nielsen, 559 U.S. at 684-685.  On remand, the district court shall determine whether such a "contractual basis" for class arbitration exists in the agreements between Catamaran and the pharmacies.

_____