16-3833-cv, 16-3854-cv
Wells Fargo Advisors, LLC v. Sappington, et al., Wells Fargo Advisors, LLC v. Tucker, et al.

# UNITED STATES COURT OF APPEALS
# FOR THE SECOND CIRCUIT

August Term, 2017

(Argued: August 17, 2017      Decided: March 7, 2018)

Docket No. 16-3833-cv

_____

WELLS FARGO ADVISORS, LLC,

*Petitioner-Appellant,*

v.

LIVIA SAPPINGTON, EWA KELLY, AKA EVA KELLY, PATRICK LABORDE,

*Respondents-Appellees.*

_____

Docket No. 16-3854-cv

_____

WELLS FARGO ADVISORS, LLC,

*Petitioner-Appellant,*

v.

REAGAN TUCKER, BENJAMIN DOOLEY, MARVIN GLASGOLD,

*Respondents-Appellees.*

_____

Before:

LEVAL, RAGGI, and LOHIER, *Circuit Judges*.

Reagan Tucker, Benjamin Dooley, Marvin Glasgold, Livia Sappington, Ewa Kelly, and Patrick LaBorde (the "Employees"), all former employees of Wells Fargo Advisors, LLC ("Wells Fargo"), filed putative class arbitrations before the American Arbitration Association seeking unpaid overtime from Wells Fargo. Wells Fargo filed petitions in the United States District Court for the Southern District of New York (Caproni, *J.*) seeking to compel bilateral rather than class arbitration. The District Court denied Wells Fargo's petitions, holding that an arbitrator, rather than a court, must determine whether the arbitration clauses in the Employees' employment contracts authorize class arbitration. We **AFFIRM**.

KENNETH J. TURNBULL, Morgan, Lewis & Bockius LLP, New York, NY, *for Petitioner-Appellant*.

PAUL W. MOLLICA, Outten & Golden LLP, Chicago, IL (Justin M. Swartz, Olivia J. Quinto-Reyes, Outten & Golden LLP, New York, NY; Paolo C. Meireles, Shavitz Law Group, P.A., Boca Raton, FL, *on the brief*), *for Respondents-Appellees*.

LOHIER, *Circuit Judge*:

Reagan Tucker, Benjamin Dooley, Marvin Glasgold, Livia Sappington,

Ewa Kelly, and Patrick LaBorde (the "Employees"), all former employees of

Wells Fargo Advisors, LLC ("Wells Fargo"), seek unpaid overtime from Wells

Fargo under the Fair Labor Standards Act ("FLSA") and State wage and hour

laws. The Employees' employment contracts contained broad arbitration clauses

2

governed by Missouri law. When the Employees filed putative class arbitrations, Wells Fargo petitioned the United States District Court for the Southern District of New York (Caproni, J.) to compel bilateral arbitration. The District Court denied Wells Fargo's petitions, holding that an arbitrator, rather than a court, must decide the availability of class arbitration.

We assume without deciding that the question whether an arbitration clause authorizes class arbitration is a so-called "question of arbitrability" presumptively for a court, rather than an arbitrator, to decide. Applying Missouri's arbitration and contract law, we conclude that the parties overcame this presumption by clearly and unmistakably expressing their intent to let an arbitrator decide whether they agreed to authorize class arbitration. Accordingly, we **AFFIRM**.

**BACKGROUND**

The Employees were entry-level financial advisors in various Wells Fargo branch offices in New York, California, and Texas from 2011 to 2014. Each entered into an employment contract with Wells Fargo that included an arbitration clause. The arbitration clause in the contracts of Tucker, Dooley, Glasgold, Kelly, and LaBorde (the "Tucker clause") provides, in relevant part:

3

You are agreeing to arbitrate any dispute, claim or controversy that may arise between you and Wells Fargo Advisors, or a client, or any other person. This means that you are giving up the right to sue Wells Fargo Advisors, its subsidiaries or employees or any client or any other person in court concerning matters related to or arising from your employment. . . . Specifically EXCLUDED from this obligation to arbitrate are any claims for State unemployment insurance . . . . Also any claims that require you to process them under a different administrative procedure pursuant to the terms of an employee benefit plan shall not be subject to arbitration. . . . [Y]ou agree that any controversy or dispute, including but not limited to, claims of wrongful termination, breach of contract, discrimination, harassment, retaliation, infliction of emotional distress, tortuous [sic] interference with business or contract, federal, state or local statute or ordinance and/or other theory, arising between you and Wells Fargo Advisors, shall be submitted for arbitration before the [Financial Industry Regulatory Authority ("FINRA")]. If the FINRA does not accept the controversy, dispute or claim, or any portion thereof, then the non-accepted controversy, dispute or claim shall be submitted for arbitration before the American Arbitration Association [("AAA")] pursuant to its Securities Arbitration Rules, effective May 1, 1993.

Tucker App'x 26–27, 34–35, 41–42, 49–50; Sappington App'x 32–33, 40–41. The arbitration clause in Sappington's contract (the "Sappington clause") provides, in relevant part:

You agree that any action instituted as a result of any controversy arising out of this Agreement, your employment or termination of your employment, shall be brought before the arbitration facility of the [FINRA] to the exclusion of all others, unless the rules and/or the codes of the FINRA provide otherwise. Both you and Wells Fargo Advisors agree that arbitration shall be the parties' exclusive remedy and that the results of such arbitration shall be final and binding

4

upon them. . . . Any controversy relating to your duty to arbitrate hereunder, or to the validity or enforceability of this arbitration clause, or to any defense to arbitration, shall also be arbitrated before the FINRA.

Sappington App'x 25.

In 2015 Tucker, Dooley, and Glasgold jointly filed nearly identical putative class arbitration actions with FINRA and the AAA, asserting claims for unpaid overtime under the FLSA and State law. Citing its rules forbidding class and collective arbitrations, FINRA rejected their action. With only the class arbitration action before the AAA remaining, Wells Fargo petitioned the District Court to compel bilateral arbitration (the "Tucker action"). Meanwhile, Sappington, Kelly, and LaBorde jointly filed nearly identical putative class arbitration actions with FINRA and the AAA, likewise asserting claims for unpaid overtime under the FLSA and State law. FINRA also rejected their action, leaving only the class arbitration action pending before the AAA. As in the Tucker action, Wells Fargo filed a petition in the District Court seeking to compel bilateral arbitration (the "Sappington action").

The District Court denied Wells Fargo's petition in the Tucker action, holding that whether an arbitration clause authorizes class arbitration is not a gateway question of arbitrability presumptively for a court to decide, but is

5

instead a question that should be answered by an arbitrator in the first instance.

Wells Fargo Advisors, L.L.C. v. Tucker, 195 F. Supp. 3d 543, 547–51 (S.D.N.Y. 2016). Adopting that same reasoning in a separate judgment, the District Court later denied Wells Fargo's petition in the Sappington action.

These appeals, which we heard in tandem, followed.[1]

## DISCUSSION

We review de novo the District Court's conclusion that an arbitrator, rather than a court, should determine whether the Tucker and Sappington clauses authorize class arbitration. See Shaw Grp. Inc. v. Triplefine Int'l Corp., 322 F.3d 115, 120 (2d Cir. 2003). In doing so, we are guided by the presumption that questions of arbitrability—certain gateway matters, such as "whether the parties are bound by a given arbitration clause" or "whether an arbitration clause in a concededly binding contract applies to a particular type of controversy"— are for a court to decide. BG Grp. PLC v. Republic of Argentina, 134 S. Ct. 1198, 1206 (2014) (quotation marks omitted). As already noted, we assume without

---

[1] On October 18, 2016, the arbitrator in the Sappington action issued a clause construction award, concluding that class arbitration is available under the Tucker clause, as applicable to Kelly and LaBorde in that action, but not under the Sappington clause, as applicable to Sappington. Wells Fargo has filed a petition to vacate the award insofar as it concerns the Tucker clause, and the parties consented to the District Court's stay of that petition pending resolution of these appeals.

6

deciding that one of these gateway matters is whether an arbitration clause authorizes class arbitration.

But that assumption marks only the first step in our inquiry, as the presumption that a court should decide a question of arbitrability is overcome when there exists "'clear and unmistakable' evidence from the arbitration agreement, as construed by the relevant state law, that the parties intended that the question of arbitrability shall be decided by [an] arbitrator." PaineWebber Inc. v. Bybyk, 81 F.3d 1193, 1198–99 (2d Cir. 1996) (quoting First Options of Chi., Inc. v. Kaplan, 514 U.S. 938, 944 (1995)). Here, Missouri supplies the "relevant state law" that governs both arbitration clauses at issue. Applying Missouri's arbitration and contract law to those arbitration clauses, see Bell v. Cendant Corp., 293 F.3d 563, 566–67 (2d Cir. 2002), we conclude, for the reasons below, that there is clear and unmistakable evidence that the parties in both cases before us intended to arbitrate all questions of arbitrability, including whether they agreed to authorize class arbitration.[2]

---

[2] The District Court concluded that whether the arbitration clauses authorize class arbitration is not a gateway question of arbitrability presumptively for judicial resolution, so it did not address whether the parties clearly and unmistakably evidenced their intent to overcome a presumption of judicial resolution. See Tucker, 195 F. Supp. 3d at 550–51. But "[w]e are free to affirm on any ground that finds support in the record, even if it was not the ground upon which the trial court relied." Headley

7

### 1. The Tucker Clause

The Tucker clause demonstrates the parties' clear and unmistakable intent to arbitrate all questions of arbitrability, including the availability of class arbitration, in three ways.

First, the Tucker clause provides that "<u>any</u> controversy or dispute" arising from the employment relationship is subject to arbitration. Tucker App'x 27, 35, 42, 50 (emphasis added); Sappington App'x 33, 41 (emphasis added). Missouri law does not require that "[a]n arbitration agreement . . . recite verbatim that the 'parties agree to arbitrate arbitrability' in order to manifest 'clear and unmistakable' agreement." <u>Dotson v. Dillard's, Inc.</u>, 472 S.W.3d 599, 604 (Mo. Ct. App. 2015) (some quotation marks omitted).[3]

Second, the Tucker clause expressly excludes from arbitration those disputes that relate to unemployment insurance and employee benefits. These exclusions reinforce our view that the parties intended to let an arbitrator decide

---

<u>v. Tilghman</u>, 53 F.3d 472, 476 (2d Cir. 1995); <u>accord</u> <u>Brown Media Corp. v. K&L Gates, LLP</u>, 854 F.3d 150, 160 n.6 (2d Cir. 2017).

[3] In that respect, Missouri law accords with our decisions holding that "a referral of 'any and all' controversies" to arbitration suffices to "reflect[] such a broad grant of power to the arbitrators as to evidence the parties' clear intent to arbitrate issues of arbitrability." <u>Shaw Grp.</u>, 322 F.3d at 121 (some quotation marks omitted); <u>accord</u> <u>Benihana, Inc. v. Benihana of Tokyo, LLC</u>, 784 F.3d 887, 898 (2d Cir. 2015); <u>Bell</u>, 293 F.3d at 568; <u>Bybyk</u>, 81 F.3d at 1199–200.

8

whether class claims are arbitrable. By expressly foreclosing certain proceedings from arbitration, the parties in these cases strongly implied that every other "controversy or dispute" remains subject to arbitral resolution. See Gen. Am. Life Ins. Co. v. Barrett, 847 S.W.2d 125, 133 (Mo. Ct. App. 1993) (applying the principle of expressio unius est exclusio alterius to contract interpretation); VKK Corp. v. Nat'l Football League, 244 F.3d 114, 130 (2d Cir. 2001) (same).

Third, the Tucker clause incorporates by reference the May 1993 Securities Arbitration Rules of the AAA (the "1993 Rules"). This Court and, more recently, the Missouri Supreme Court have held that when parties "explicitly incorporate rules that empower an arbitrator to decide issues of arbitrability, the incorporation serves as clear and unmistakable evidence of the parties' intent to delegate such issues to an arbitrator." Contec Corp. v. Remote Sol. Co., 398 F.3d 205, 208 (2d Cir. 2005); see State ex rel. Pinkerton v. Fahnestock, 531 S.W.3d 36, 45–48 (Mo. 2017) (en banc). Wells Fargo correctly points out that the 1993 Rules do not by themselves authorize arbitrators to resolve questions of arbitrability. But Rule 1 of the 1993 Rules provides that "[t]hese rules and any amendment of them shall apply in the form obtaining at the time the demand for arbitration . . . is received by the AAA." AAA, Securities Arbitration Rules (effective May 1,

9

1993), Rule 1. The Employees' arbitration demands were received by the AAA in July and December 2015. In July 1999—years before the Employees' contracts were executed or their demands for arbitration were filed—the AAA replaced the 1993 Rules with the Commercial Arbitration Rules. See AAA, Securities Arbitration Supplementary Procedures (effective July 1, 1999), Rule 1, available at http://www.adr.org/ArchiveRules (last visited March 6, 2018). Rule 7 of the 2013 Commercial Arbitration Rules provides that an arbitrator may "rule on his or her own jurisdiction, including any objections with respect to the existence, scope, or validity of the arbitration agreement or to the arbitrability of any claim or counterclaim." AAA, Commercial Arbitration Rules and Mediation Procedures (effective Oct. 1, 2013), Rule 7(a), available at http://www.adr.org/Rules (last visited March 6, 2018). Moreover, in October 2003, about eight years before Wells Fargo entered into the first of the employment contracts at issue here, the AAA enacted yet another set of rules entitled the "Supplementary Rules for Class Arbitrations." Those rules "apply to any dispute arising out of an agreement that provides for arbitration pursuant to any of the rules of the [AAA] where a party submits a dispute to arbitration on behalf of . . . a class." AAA, Supplementary Rules for Class Arbitrations (effective

Oct. 8, 2003), Rule 1(a), available at http://www.adr.org/ClassArbitration (last visited March 6, 2018). Those rules also provide that "the arbitrator shall determine as a threshold matter, in a reasoned, partial final award on the construction of the arbitration clause, whether the applicable arbitration clause permits the arbitration to proceed on behalf of . . . a class." Id., Rule 3 (emphasis added). The language of both the Supplementary Rules for Class Arbitrations and Rule 7 of the Commercial Arbitration Rules, effective well before the demands for arbitration were filed with the AAA in these cases, clearly leaves the class arbitration question to an arbitrator.

Wells Fargo criticizes the "string of inferences" required to go from the Tucker clause's incorporation of the 1993 Rules to the current Commercial Arbitration Rules that authorize arbitrators to resolve questions of arbitrability. Tucker Appellant Br. at 34. We reject the criticism. Incorporating the 1993 Rules into the Employees' contracts "made them as much a part of the contract[s] as any other provision" therein. City of Chesterfield v. Frederich Constr. Inc., 475 S.W.3d 708, 711 (Mo. Ct. App. 2015). And Rule 1 of the 1993 Rules, as already noted, made clear that the rules would "apply in the form obtaining at the time the demand for arbitration . . . is received by the AAA." AAA, Securities

11

Arbitration Rules (effective May 1, 1993), Rule 1. Particularly after the Commercial Arbitration Rules went into force, Wells Fargo could have insisted that the 1993 Rules "except for Rule 1" apply to its employment contracts, including the contracts at issue here, but it did not.

Wells Fargo also points to what it terms the "bilateral terminology" of the contracts—"you and Wells Fargo," Tucker App'x 27, 35, 42, 50; Sappington App'x 33, 41—to argue that the parties did not intend to let an arbitrator decide the class arbitration availability question in particular. Tucker Appellant Br. at 31. But references to the employee and the employer are to be expected in an employment contract; by themselves such references shed little, if any, light on whether the parties intended an arbitrator or a court to decide if the arbitration clause authorizes class arbitration. Indeed, even an express contractual statement concerning class arbitration could easily be phrased in bilateral terms. Consider the following: "You and Wells Fargo agree that the availability of class arbitration as to certain claims shall be determined by an arbitrator." We therefore are not persuaded that the references to "you and Wells Fargo" by themselves reveal any intent to prevent an arbitrator from deciding the specific question of class arbitration.

To the contrary, for the reasons noted above, we conclude that under Missouri law the Tucker clause clearly and unmistakably demonstrates an intent to delegate to an arbitrator any questions of arbitrability, including whether class arbitration is available. Missouri law requires no more explicit language than that found in the Tucker clause to demonstrate such a clear and unmistakable intent. We therefore decline to join some of our sister circuits that, apparently notwithstanding State law, require parties to explicitly delegate the particular question of class arbitration, in contrast to other questions of arbitrability, to an arbitrator. See, e.g., Catamaran Corp. v. Towncrest Pharmacy, 864 F.3d 966, 973 (8th Cir. 2017) (requiring "a more particular delegation of the [class arbitration availability] issue than we may otherwise deem sufficient in bilateral disputes"); Chesapeake Appalachia, LLC v. Scout Petroleum, LLC, 809 F.3d 746, 763 (3d Cir. 2016) (requiring "express contractual language unambiguously delegating the question of class arbitrability to the arbitrators" (quotation marks omitted)); Reed Elsevier, Inc. ex rel. LexisNexis Div. v. Crockett, 734 F.3d 594, 599 (6th Cir. 2013) (requiring that an agreement specifically "mention classwide arbitration"). But see Reed v. Fla. Metro. Univ., Inc., 681 F.3d 630, 633–36 (5th Cir. 2012) (the incorporation of AAA rules, standing alone, suffices to refer the class arbitration

13

availability question to an arbitrator), abrogated on other grounds by Oxford Health Plans LLC v. Sutter, 569 U.S. 564, 568–73 (2013).[4]

Some of these sister circuits have justified requiring more explicit language to delegate the question of class arbitrability to an arbitrator by explaining that "class arbitration implicates a particular set of concerns that are absent in the bilateral context." Chesapeake, 809 F.3d at 764; accord Catamaran, 864 F.3d at 973 (identifying these concerns as "bet-the-company stakes without effective judicial review," "loss of confidentiality," "due process rights of absent class members," "loss of speed and efficiency," and "increase in costs"). These are legitimate concerns. But recall that our inquiry involves two distinct steps: (1) determining whether the question is one of arbitrability presumptively for a court to decide and, if so, (2) determining, on a case-by-case basis, whether there is clear and unmistakable evidence of the parties' intent to let an arbitrator resolve that question. The concerns that some of our sister circuits have identified as unique to class arbitration indisputably relate, in our view, to the

---

[4] We also note that Wells Fargo has not argued that Missouri law requires parties to use express contractual language to clearly and unmistakably demonstrate their intent to delegate the class arbitration availability question to an arbitrator. Nor has it argued that Missouri may not permit parties to demonstrate their clear and unmistakable intent to delegate the class arbitration availability question to an arbitrator in the absence of express contractual language to that effect.

first of these steps, that is, determining whether the particular class arbitration availability question is "the kind of narrow circumstance where contracting parties would likely have expected a court to have decided the gateway matter." Howsam v. Dean Witter Reynolds, Inc., 537 U.S. 79, 83 (2002); see Catamaran, 864 F.3d at 971 (describing questions of arbitrability as "substantive in nature"); Chesapeake, 809 F.3d at 753 (same); Reed Elsevier, 734 F.3d at 597 (describing questions of arbitrability as "important" and contrasting them with "subsidiary" questions). When, as here, we assume that the class arbitration question is a question of arbitrability and, accordingly, that a court should presumptively answer that question, we still must consider whether there is clear and unmistakable evidence that the parties intended otherwise based on the language of the clause at issue. State law defines how explicit the clause's language must be to satisfy that standard—and Missouri law requires nothing more explicit than the language found in the Tucker clause.

Because we conclude that the Tucker clause, interpreted under Missouri law, clearly and unmistakably evidences the parties' intent to let an arbitrator determine whether that clause authorizes class arbitration, we affirm the District

15

Court's decision denying Wells Fargo's petition to compel bilateral arbitration under that clause.

2.    The Sappington Clause

Our inquiry now turns to the Sappington clause, which we also interpret under Missouri law, and which commits to arbitration "<u>any</u> action instituted as a result of <u>any</u> controversy" arising out of the employment relationship between Wells Fargo and Sappington.  Sappington App'x 25 (emphasis added).  As with the Tucker clause, this broad language "reflects such a broad grant of power to the arbitrators as to evidence the parties' clear intent to arbitrate issues of arbitrability."  <u>Shaw Grp.</u>, 322 F.3d at 121 (quotation marks omitted); <u>see</u> <u>Dotson</u>, 472 S.W.3d at 604 ("An arbitration agreement need not recite verbatim that the 'parties agree to arbitrate arbitrability' in order to manifest 'clear and unmistakable' agreement." (some quotation marks omitted)).  The Sappington clause also includes the following express delegation provision:  "Any controversy relating to your duty to arbitrate hereunder, or to the validity or enforceability of this arbitration clause, or to any defense to arbitration, shall also be arbitrated[.]"  Sappington App'x 25.  Under Missouri law, a provision that expressly delegates to an arbitrator "the authority to resolve disputes relating to

16

the enforceability, validity, or applicability of an arbitration agreement constitutes clear and unmistakable evidence that the parties intended to arbitrate arbitrability." Dotson, 472 S.W.3d at 604 (quotation marks omitted). On appeal, Wells Fargo concedes that its dispute with the Employees about the availability of class arbitration implicates the "validity" of the Sappington clause. Sappington Appellant Br. at 23–25. For these reasons, we conclude that the Sappington clause also clearly and unmistakably delegates the class arbitration question to an arbitrator. Accordingly, we affirm the District Court's decision denying Wells Fargo's petition to compel bilateral arbitration under the Sappington clause.[5]

---

[5] The Sappington clause requires that all controversies be brought before FINRA "to the exclusion of all other[]" arbitration facilities. Sappington App'x 25. The Sappington clause thus contemplates that FINRA should resolve the class arbitration availability question. As explained above, though, FINRA refused to accept Sappington's claims on the ground that she purported to proceed as part of a class and FINRA's rules prohibited class arbitration. For reasons that are unclear in the record, the District Court thereafter ordered the parties to proceed before a AAA arbitrator, notwithstanding the Sappington clause's reference to FINRA as the exclusive arbitral forum. As a result, a AAA arbitrator resolved the class arbitration availability question in a way that favored Wells Fargo. Having not advanced them on appeal, the parties have abandoned any argument that FINRA's refusal to arbitrate Sappington's claims means that those claims should be litigated in district court, see Moss v. First Premier Bank, 835 F.3d 260, 264–67 (2d Cir. 2016), or that FINRA, rather than a non-FINRA arbitrator, should resolve the question of class arbitration availability.

## CONCLUSION

We have considered Wells Fargo's remaining arguments and conclude that they are without merit. The judgments of the District Court are **AFFIRMED**.