TYMKOVICH, Chief Judge, concurring.
I join in affirming the district court. As the panel decision recognizes, we need not decide whether the availability of classwide process is an arbitrability question. I write separately, however, to make clear precisely how our ruling differs from related opinions in other circuits. In addition, because I anticipate more circuit courts-including our own-will eventually face this difficult question, I respectfully offer my reasons for doubting that the popular answer is the correct one.
I.
To begin, our recent opinion in Belnap v. Iasis Healthcare , 844 F.3d 1272 (10th Cir. 2017), neatly disposes of this appeal. Under Belnap , Dish and Ray's incorporation of the AAA Employment Rules into their arbitration agreement constitutes clear and unmistakable evidence of an agreement to arbitrate matters of arbitrability.[1] Belnap thus demands we apply the FAA's deferential standard of judicial scrutiny to the arbitrator's decision in this case regardless of whether or not that decision determines matters of arbitrability. And because-as the panel opinion points out-the arbitrator here has rendered a decision within the bounds of permissible choice, we must affirm the district court.
A.
Belnap tells us how we must interpret the arbitration agreement before us here. Like the contract between Dish and Ray, the Belnap court confronted a contract that failed to specify on its face who-the arbitrator or a court-would decide matters of arbitrability. The contract did, however, provide that the arbitration "shall be administered by JAMS and conducted in accordance with its Streamlined Arbitration Rules and Procedures." Belnap , 844 F.3d at 1276 (emphasis omitted). And like the AAA Employment Rules here, the JAMS Rules at issue in Belnap stated that "[j]urisdictional and arbitrability disputes ... shall be submitted and ruled on by the Arbitrator ." Id. at 1281.
We deemed this clear and unmistakable evidence of an agreement to arbitrate arbitrability. See id. As our opinion explained, *1253 it "would have been quite evident to the parties" that their invocation of the JAMS rules incorporated those rules into the agreement. Id. at 1282. Because those rules plainly delegated arbitrability determinations to the arbitrator, their incorporation rendered that delegation clear and unmistakable. Id. at 1283-84 ; accord Wells Fargo Advisors, LLC v. Tucker , 884 F.3d 392, 396 (2d Cir. 2018).
We cannot honor Dish's request to ignore Belnap merely because it dealt with the JAMS rules rather than the AAA Employment Rules. See Aplt. Br. at 24. This is a distinction without a difference. Belnap 's reasoning applies to the incorporation of any arbitration rules that explicitly delegate arbitrability determinations to the arbitrator. Indeed, the Belnap court drew support from a body of precedent that touched multiple sets of arbitration rules-including AAA rules. See id. at 1283-84. In sum, Belnap controls this issue.
B.
This conclusion also moots classification of the right to class or collective action procedures as a question of arbitrability. Our opinion about whether a given question goes to arbitrability has no legal import where-as here-we have "clear[ ] and unmistakabl[e]" evidence of a decision to arbitrate arbitrability. AT&T Tech., Inc. v. Commc'ns Workers , 475 U.S. 643, 649, 106 S.Ct. 1415, 89 L.Ed.2d 648 (1986). In such circumstances, we approach all of the arbitrator's decisions with the heavy deference the FAA mandates.
I recognize that other circuits have not been so particular about this order of analytical battle. See Catamaran Corp. v. Towncrest Pharmacy , 864 F.3d 966, 971 (8th Cir. 2017) ; Del Webb Cmtys., Inc. v. Carlson , 817 F.3d 867, 874, 877 (4th Cir. 2016), cert. denied , --- U.S. ----, 137 S.Ct. 567, 196 L.Ed.2d 444 (2016) ; Opalinski v. Robert Half Int'l Inc. , 761 F.3d 326, 331, 335 (3d Cir. 2014) ; Reed Elsevier, Inc. ex rel. LexisNexis v. Crockett , 734 F.3d 594, 597-99 (6th Cir. 2013). But for them it did not matter; each ultimately held the contract before them lacked sufficient proof of an agreement to arbitrate arbitrability. See Catamaran , 864 F.3d at 972-73 ; DelWebb , 817 F.3d at 877 ; Opalinski , 761 F.3d at 335 ; Reed Elsevier , 734 F.3d at 599. Our precedent commands a different course in this case, as I have just explained. As a result, the sequence of our analysis is critical.
C.
Belnap thus plots a clear course for resolving Dish's appeal. It tells us to consider first whether Dish and Ray have agreed to arbitrate arbitrability. It then tells us that, by incorporating the AAA Employment Rules, Dish and Ray did in fact agree to arbitrate arbitrability-clearly and unmistakably. And since the arbitrator rendered a decision within the broad discretion the FAA affords, that determination must stand.
II.
This case therefore gives us no occasion to decide whether the availability of class or collective action procedures is an arbitrability question. But the time for that decision will inevitably come, in our circuit and elsewhere. If and when it does, I see reason to question the analysis of the circuits which have already decided the issue. See Catamaran , 864 F.3d at 971-72 ; Del Webb , 817 F.3d at 873-77 ; Opalinski , 761 F.3d at 331-35 ; Reed Elsevier , 734 F.3d at 597-99. Those courts have aptly identified the fundamental differences between classwide and bilateral arbitration. But the law does not ask how much these two means of arbitration differ. The law asks whether arbitrating the same subject-matter on a classwide basis as opposed to bilaterally *1254 renders the underlying claims functionally distinct. I see several reasons to doubt a procedural mechanism for combining claims would have that effect.
I begin with the observation that the FAA maintains a dichotomy whereby, pursuant to private contract, some legal claims get arbitrated while others go to court. We use the term "arbitrability"-meaning the ability to arbitrate -to denote a claim's belonging to one forum or the other. A "question of arbitrability" is therefore a question about whether the parties have agreed to settle a particular claim through arbitration or instead litigate it in court. See, e.g. , Rent-A-Ctr., W., Inc. v. Jackson , 561 U.S. 63, 69, 130 S.Ct. 2772, 177 L.Ed.2d 403 (2010) (describing arbitrability questions as concerning issues "such as whether the parties have agreed to arbitrate or whether their agreement covers a particular controversy ." (emphasis added) ); Howsam v. Dean Witter Reynolds, Inc. , 537 U.S. 79, 83-84, 123 S.Ct. 588, 154 L.Ed.2d 491 (2002) ; see also, e.g. , BG Group PLC v. Republic of Argentina , 572 U.S. 25, 134 S.Ct. 1198, 1207, 188 L.Ed.2d 220 (2014) ("The provision before us ... determines when the contractual duty to arbitrate arises, not whether there is a contractual duty to arbitrate at all."); cf. United Steelworkers v. Warrior & Gulf Navigation Co. , 363 U.S. 574, 582, 80 S.Ct. 1347, 4 L.Ed.2d 1409 (1960) ("[T]he judicial inquiry ... must be strictly confined to the question whether the reluctant party did agree to arbitrate the grievance ...." (emphasis added) ). Put more simply, questions of arbitrability generally go to the "subject matter" of the dispute. John Wiley & Sons, Inc. v. Livingston , 376 U.S. 543, 557, 84 S.Ct. 909, 11 L.Ed.2d 898 (1964).
By contrast, whether a claimant can proceed on behalf of a class is classically a matter of procedural rule, not substantive right. See Epic Systems Corp. v. Lewis , --- U.S. ----, 138 S.Ct. 1612, 1624-25, 200 L.Ed.2d 889 (2018). For example, under the Rules of Civil Procedure applicable in federal courts, class actions come about through judicial administration of Rule 23. See, e.g. , Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co. , 559 U.S. 393, 399-400, 130 S.Ct. 1431, 176 L.Ed.2d 311 (2010). Likewise, the joinder provisions contained in Rules 18, 19, and 20 combine claims in a manner comparable to the Fair Labor Standards Act's collective action provision. See Fed. R. Civ. P. 18 - 20 ; Genesis Healthcare Corp. v. Symczyk , 569 U.S. 66, 133 S.Ct. 1523, 1527 n.1, 185 L.Ed.2d 636 (2013). Federal courts can use these Rules to combine claims in civil lawsuits only because the Rules "really regulate[ ] procedure," Sibbach v. Wilson & Co. , 312 U.S. 1, 14, 61 S.Ct. 422, 85 L.Ed. 479 (1941), and do not "abridge, enlarge or modify any substantive right," 28 U.S.C. § 2072(b). In other words, they bear on how a claim gets litigated, but not the underlying subject matter of the claim or the contours of substantive law.
In apparent recognition of the difference between questions of arbitrability and questions of procedure, our FAA case law tells us to presume that courts decide the former whereas arbitrators-within their assigned subject-matter purview-decide the latter. See Howsam , 537 U.S. at 83-84, 123 S.Ct. 588. To be sure, the Supreme Court has identified certain procedural questions of arbitrability in the "narrow circumstance[s] where contracting parties would likely have expected a court to have decided" a given threshold issue. Id. at 83, 123 S.Ct. 588 (emphasis added). But that expectations-based inquiry applies only to "potentially dispositive gateway question[s]" the answers to which "will determine whether the underlying controversy will proceed to arbitration on the merits" at all. Id. (emphasis added); see BG Group , 134 S.Ct. at 1207 ("The text and structure *1255 of the provision make clear that it operates as a procedural condition precedent to arbitration." (emphasis added) ). The right to combine claims does not fall into this "threshold" or "gateway" category because it has nothing to do with whether the underlying controversy can proceed to arbitration. Indeed, the opportunity to allow or deny claim combination necessarily follows a determination that the parties have agreed to arbitrate the underlying claims on the merits.
Several circuits have nonetheless classified the right to combine claims as implicating the arbitrability of those claims. They have portrayed this result as compelled by Supreme Court dicta and good policy. They cite loss of efficiency, loss of confidentiality, and raised stakes as reasons to presume that parties would not want an arbitrator deciding the availability of class or collective action procedures. See Catamaran , 864 F.3d at 971-72 ; Del Webb , 817 F.3d at 875-76 ; Opalinski , 761 F.3d at 331-34 ; Reed Elsevier , 734 F.3d at 598. I too doubt the utility of classwide arbitration, but in my mind the suggested conclusion does not follow from the premises. Only if a court denies the claimant classwide procedures can it preserve the recognized benefits of bilateral arbitration. And an arbitrator can deny the same classwide procedures just as well. Most importantly, however, the decision maker-whether court or arbitrator-must conclude the parties themselves did not agree to classwide arbitration.
The valid criticisms of arbitrating an entire class of claims together thus move past the real issue of who decides and instead focuses-unnecessarily-on the decision itself . But cf. Epic Systems , 138 S.Ct. at 1632 ("The respective merits of class actions and private arbitration as means of enforcing the law are questions constitutionally entrusted not to the courts to decide but to the policymakers in the political branches where those questions remain hotly contested."). This is especially troublesome in the FAA context, where Congress has endeavored to minimize judicial oversight. See, e.g. , id. ; Oxford Health Plans LLC v. Sutter , 569 U.S. 564, 133 S.Ct. 2064, 2068, 186 L.Ed.2d 113 (2013) ("[L]imited judicial review ... 'maintain[s] arbitration's essential virtue of resolving disputes straightaway.' If parties could take 'full-bore legal and evidentiary appeals,' arbitration would become 'merely a prelude to a more cumbersome and time-consuming judicial review process.' " (citation omitted) (quoting Hall Street Assocs., L.L.C. v. Mattel, Inc. , 552 U.S. 576, 588, 128 S.Ct. 1396, 170 L.Ed.2d 254 (2008) ) ).
I am likewise convinced the mere magnitude of an issue cannot transform it from a procedural concern to a matter of substantive law. See Sibbach , 312 U.S. at 14, 61 S.Ct. 422 ("If we were to adopt the suggested criterion of the importance of the alleged right we should invite endless litigation and confusion worse confounded."). The Supreme Court long ago acknowledged that any procedural rule has the potential to determine a case. See Hanna v. Plumer , 380 U.S. 460, 468, 85 S.Ct. 1136, 14 L.Ed.2d 8 (1965). Indeed, as one legislator famously and aptly put it, "procedure is of exquisite importance.... I'll let you write the substance ... you let me write the procedure, and I'll [get] you every time." Regulatory Reform Act: Hearing on H.R. 2327 Before the Subcomm. on Admin. Law and Governmental Regulations of the H. Comm. on the Judiciary , 98th Cong. 312 (1983) (statement of Rep. John Dingell, Chairman, H. Comm. on Energy & Commerce). But aside from the few "gateway" issues already acknowledged, the FAA does not empower courts to wrest procedural matters from arbitrators on the basis of consequence alone. See Howsam , 537 U.S. at 85, 123 S.Ct. 588 ; John Wiley , 376 U.S. at 557, 84 S.Ct. 909 *1256 ("Once it is determined ... that the parties are obligated to submit the subject matter of a dispute to arbitration, 'procedural' questions which grow out of the dispute and bear on its final disposition should be left to the arbitrator.").
Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp. , 559 U.S. 662, 130 S.Ct. 1758, 176 L.Ed.2d 605 (2010), does not say otherwise. In Stolt-Nielsen , the Supreme Court held that an arbitrator acted in manifest disregard of the law by imposing class procedures solely on the basis of his own policy preference. See id. at 671-72, 130 S.Ct. 1758. The manifold differences between classwide and bilateral arbitration were crucial to that holding because the arbitrator had no contractual basis for implying an agreement to arbitrate on a classwide basis from an agreement to arbitrate bilaterally. See id. at 684-85, 130 S.Ct. 1758. To be sure, dicta in Stolt-Nielsen indicates that this was not "merely " a question of "procedural mode." Id. at 687, 130 S.Ct. 1758 (emphasis added). But the Court used this point only to emphasize the seriousness of the question, which the Court itself described as "whether the parties agreed to authorize class arbitration." Id. (emphasis added). I do not take this to mean that the differences between two sets of procedures renders them any less procedural . Cf., e.g. , Epic Systems , 138 S.Ct. at 1623-29 (repeatedly referring to claim combination as a matter of procedure). Indeed, consider the manifold differences between the class action procedures of Rule 23 and the collective action procedures provided for in the FLSA. See, e.g. , LaChapelle v. Owens-Illinois, Inc. , 513 F.2d 286, 288 (5th Cir. 1975) (per curiam). Few, if any, would think those differences undermined the decidedly procedural character of these distinct means for combining claims. Thus, if Stolt-Nielsen does support the decisions of other circuits, it does not do so on the basis of authoritative descriptions explaining what it means for a question to bear on arbitrability. And it is those descriptions that bind this court.
AT&T Mobility LLC v. Concepcion , 563 U.S. 333, 131 S.Ct. 1740, 179 L.Ed.2d 742 (2011), has even less bearing on this case. In Concepcion , the Supreme Court held preempted California's judicial determination that classwide arbitration waivers in consumer contracts of adhesion were unconscionable. See Concepcion , 131 S.Ct. at 1753. The Court based its reasoning largely on the idea that, by mandating the availability of classwide arbitration, California reduced parties' ability to realize arbitration's benefits as the FAA guarantees them. See id. at 1748-53. But the classification question we are trying to answer does not concern freedom of choice. Indeed, it does not even concern what the parties have actually chosen. Rather, it concerns who presumptively determines what the parties have chosen. And both the holding in Concepcion as well as its underlying rationale direct us away from enhanced judicial scrutiny.
Other circuits have also raised due process concerns surrounding class and collective action arbitrations. But I do not see one person's entitlement to claim-combination procedures as bearing in any way on the due process rights of others. For Ray to arbitrate his claims alongside those of similarly situated Dish employees, those employees' claims must be deemed arbitrable just as Ray's have been. And other employees may or may not have arbitration agreements with Dish that may or may not cover the same substantive claims and may or may not contain agreements to arbitrate arbitrability. Accordingly, before any classwide arbitration can resolve these other employees' claims, those claims would each be subject to the same arbitrability determinations that they would have been in the bilateral context. Thus, so long as courts continue to enforce the FAA, I *1257 see no reason why classwide arbitration threatens due process any more than bilateral arbitration does.
Finally, I think it important to note that a party hoping to avoid classwide arbitration has an easy way to do so: put it in the contract. The FAA not only protects freedom of choice with respect to arbitration agreements, Epic Systems , 138 S.Ct. at 1632, it also preempts the states from limiting those choices, see Concepcion , 131 S.Ct. at 1753. We therefore need not do violence to our FAA jurisprudence to save parties from opting for classwide arbitration contrary to our perception of their best interests.

Though not at issue here, I doubt state contract law bears on the "clear and unmistakable" standard required for agreements to arbitrate arbitrability. See First Options of Chicago, Inc. v. Kaplan , 514 U.S. 938, 944-45, 115 S.Ct. 1920, 131 L.Ed.2d 985 (1995) (describing the elevated standard as a creature of Supreme Court precedent and thus, presumably, federal law).