# United States Court of Appeals
### For the Eighth Circuit

_____

No. 17-3501
_____

Catamaran Corporation

*Plaintiff - Appellee*

v.

Towncrest Pharmacy; Clark's Pharmacy; Meyer's Healthmart Pharmacy; Osterhaus Pharmacy

*Defendants - Appellants*
_____

Appeal from United States District Court
for the Southern District of Iowa - Des Moines
_____

Submitted: October 15, 2019
Filed: January 10, 2020
_____

Before LOKEN, SHEPHERD, and STRAS, Circuit Judges.
_____

SHEPHERD, Circuit Judge.

This case returns to us after remand to the district court to consider whether a contractual basis for class arbitration exists in the agreements between the parties. Catamaran Corp. v. Towncrest Pharmacy, 864 F.3d 966 (8th Cir. 2017)

(Catamaran I).  On remand, the district court[1] granted Catamaran Corporation's motion for summary judgment, finding there was no such contractual basis in the agreements. Towncrest Pharmacy, Clark's Pharmacy, Meyer's Healthmart Pharmacy, and Osterhaus Pharmacy (collectively, the pharmacies) appeal.  Having jurisdiction under 28 U.S.C. § 1291, we now affirm.

I.

The facts of this case are extensively detailed in Catamaran I.  As relevant to this appeal, Catamaran is a pharmacy benefit manager.  It contracts with entities that sponsor, administer, or otherwise participate in prescription drug benefit plans. Among other services, Catamaran reimburses pharmacies that furnish prescription drugs to plan members.  At issue are two agreements for such reimbursements between the pharmacies and Catamaran's predecessors-in-interest, SXC Health Solutions Corp. and Catalyst Health Solutions, Inc.  The pharmacies entered into these agreements through a pharmacy services administration organization, AccessHealth, of which the pharmacies are members.  AccessHealth acted as attorney-in-fact for the pharmacies and signed the agreements on their behalf.  Both agreements contain arbitration provisions.  The SXC Agreement provides that after informal discussions fail, "either party may submit the dispute to binding arbitration in accordance with the Rules for the Conduct of Arbitration of the American Arbitration Association [AAA] . . . ."  Similarly, the Catalyst Agreement provides "[a]ny controversy or claim arising out of or relating to this Agreement shall be settled by arbitration in accordance with the applicable rules of the [AAA]."  As we noted in Catamaran I, "[n]either agreement uses the word 'class' or refers to class arbitration."  864 F.3d at 969.

---

[1]The Honorable Stephanie M. Rose, United States District Judge for the Southern District of Iowa.

After a dispute between the parties arose, the pharmacies filed a demand for class arbitration with the AAA. Catamaran initiated an action in the district court seeking to prevent the pharmacies from pursuing class arbitration. Catamaran then moved for summary judgment and the district court denied the motion, finding that the agreements committed the class arbitration question to an arbitrator. On appeal, this Court reversed, holding that the question of whether the agreements provide for class arbitration is a substantive question of arbitrability, and thus presumptively a question for the court to decide, and the agreements did not otherwise commit the question to an arbitrator. We remanded the case to the district court to determine "whether such a 'contractual basis' for class arbitration exists in the agreements between Catamaran and the pharmacies." Id. at 973-74. On remand, the district court found that there was no such contractual basis. The district court thus granted Catamaran's motion for summary judgment and entered the requested declaratory judgment prohibiting class arbitration. The pharmacies now appeal.

II.

The pharmacies argue the district court erred because the agreements establish a contractual basis for class arbitration. We review de novo a district court's order granting summary judgment. Lamoureux v. MPSC, Inc., 849 F.3d 737, 739 (8th Cir. 2017). Under the Federal Arbitration Act (FAA), 9 U.S.C. § 1 et. seq., a party may "petition a United States district court for an order directing that arbitration proceed in the manner provided for in such agreement" because the "primary purpose of the FAA is to ensure that private agreements to arbitrate are enforced according to their terms." Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp., 559 U.S. 662, 682 (2010) (internal quotation marks omitted). "In this endeavor, as with any other contract, the parties' intentions control." Id. (internal quotation marks omitted). As such, the Supreme Court in Stolt-Nielsen held that "a party may not be compelled under the FAA to submit to class arbitration unless there is a contractual basis for concluding that the party *agreed* to do so." Id. at 684. Further, the Supreme Court recently

reaffirmed and clarified the contractual basis standard in <u>Lamps Plus, Inc. v. Varela</u> in which the Court held that an ambiguous agreement cannot provide the necessary contractual basis to conclude that the parties agreed to class arbitration. 139 S. Ct. 1407, 1416-17 (2019) ("Neither silence nor ambiguity provides a sufficient basis for concluding that parties to an arbitration agreement agreed to undermine the central benefits of arbitration itself."). Accordingly, we must determine whether there is an affirmative contractual basis to conclude that the parties agreed to class arbitration. <u>See</u> <u>id.</u>

As the pharmacies concede, the agreements do not explicitly authorize class arbitration or even reference it at all. Other circuits have determined that such "[s]ilence regarding class arbitration generally indicates a prohibition . . . ." <u>Quilloin v. Tenet HealthSystem Phila., Inc.</u>, 673 F.3d 221, 232 (3d Cir. 2012); <u>see also</u> <u>Opalinski v. Robert Half Int'l Inc.</u>, 677 F. App'x 738, 741 (3d Cir. 2017) (collecting cases). Indeed, this Court has affirmed a denial of a request to arbitrate as a class, based on arbitration clauses in partnership agreements, because "the goal of the FAA is to enforce the agreement of the parties" and "the partnership agreements ma[de] no provision for arbitration as a class." <u>Dominium Austin Partners, L.L.C. v. Emerson</u>, 248 F.3d 720, 728 (8th Cir. 2001). The rationale behind this interpretation of silence is that there are fundamental differences between individual and class arbitration, including that in a class arbitration proceeding: (1) the benefits of arbitration are "substantially lessened"; (2) the presumption of confidentiality and privacy "is lost or becomes more difficult"; (3) the commercial stakes are much higher with limited judicial review; and (4) due process concerns arise because it adjudicates the rights of absent parties. <u>Catamaran I</u>, 864 F.3d at 971-72 (citing <u>Stolt-Nielsen</u>, 559 U.S. at 685-87). These fundamental differences dictate against "presum[ing] . . . that the parties' mere silence on the issue of class-action arbitration constitutes consent to resolve their disputes in class proceedings." <u>Stolt-Nielsen</u>, 559 U.S. at 687.

The pharmacies attempt to undermine the significance of the agreements' silence regarding class arbitration by minimizing the differences between individual and class arbitration in this case. For instance, the pharmacies argue that the benefits of arbitration would not be lost in class arbitration because the underlying dispute revolves around a single agreement and involves issues that equally affect all of the pharmacies. But their arguments miss the mark. As the district court noted, the fact that the pharmacies have the same claims against Catamaran based on the same agreement demonstrates only why the pharmacies now want to proceed with class arbitration in the underlying dispute. It does not establish that there is a contractual basis for class arbitration. Thus, just as we found that, in light of the fundamental differences between individual and class arbitration, silence was "insufficient grounds for delegating the [class arbitration] issue to an arbitrator" in Catamaran I, so too do we find silence does not provide a sufficient basis for concluding that the parties agreed to class arbitration. 864 F.3d at 973; see also Stolt-Nielsen, 559 U.S. at 687.

However, the pharmacies assert that the agreements' silence on the issue of class arbitration does not end the inquiry under the contractual basis standard. Relying on specific language in Stolt-Nielsen, the pharmacies contend that the Supreme Court has recognized that authorization of class arbitration may be implicit in some cases, and the agreements here reflect such implicit authorization. Specifically, the Supreme Court noted that "[i]n certain contexts, it is appropriate to presume that parties that enter into an arbitration agreement implicitly authorize the arbitrator to adopt such procedures as are necessary to give effect to the parties' agreement." Stolt-Nielsen, 559 U.S. at 684-85. However, the Court also noted that authorization of class arbitration is not to be "infer[red] solely from the fact of the parties' agreement to arbitrate." Id. at 685. Thus, the pharmacies must point to more than the arbitration provisions alone to support a finding that the parties implicitly authorized class arbitration.

The pharmacies offer several textual arguments in support of their claim that the parties implicitly authorized the pharmacies to proceed as a class in the event of a dispute. Specifically, they cite the fact that one attorney-in-fact brokered and signed the two agreements on behalf of all of the pharmacies, that the arbitration provisions are broad in scope, and that the agreements refer to the pharmacies as a single entity. However, the pharmacies have not presented any relevant authority for the proposition that such facts support a finding of implicit authorization of class arbitration. The pharmacies offer only Illinois state court decisions for the general principle that the court will find an implied term when it "was so clearly in contemplation of the parties as that they deemed unnecessary to express it . . . or that it is necessary to imply such a covenant in order to give effect to and effectuate the purpose of the contract as a whole." Goldblatt Bros. Inc. v. Addison Green Meadows, Inc., 290 N.E.2d 715, 719 (Ill. App. Ct. 1972) (quoting Fox v. Fox Valley Trotting Club, Inc.,123 N.E.2d 595, 598 (Ill. App. Ct. 1954), rev'd on other grounds, 134 N.E.2d 806 (Ill. 1956)). We conclude the agreements are not inconsistent with individual arbitration and do not support the conclusion that the parties intended class arbitration and believed that intent was so evident from the terms of the written agreements that it was unnecessary to express that intent within the agreements themselves. Accordingly, there is no contractual basis to conclude that the parties implicitly authorized class arbitration.

## III.

Because there is no contractual basis to conclude that the parties agreed to class arbitration, we affirm.

_____