**PUBLISHED**
UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

No. 15-1385

DELL WEBB COMMUNITIES, INC.; PULTEGROUP, INC.,

Petitioners - Appellants,

v.

ROGER F. CARLSON; MARY JO CARLSON,

Respondents - Appellees.

Appeal from the United States District Court for the District of South Carolina, at Beaufort. Solomon Blatt, Jr., Senior District Judge. (9:14-cv-01877-SB)

Argued: December 9, 2015                Decided: March 28, 2016

Before TRAXLER, Chief Judge, GREGORY and DIAZ, Circuit Judges.

Reversed, vacated, and remanded by published opinion. Judge Diaz wrote the opinion, in which Chief Judge Traxler and Judge Gregory joined.

**ARGUED**: Robert Leon Widener, MCNAIR LAW FIRM, P.A., Columbia, South Carolina, for Appellants. Michael S. Seekings, LEATH BOUCH & SEEKINGS, LLP, Charleston, South Carolina, for Appellees. **ON BRIEF**: A. Victor Rawl, Jr., Henry W. Frampton, IV, MCNAIR LAW FIRM, P.A., Charleston, South Carolina, for Appellants. William Jefferson Leath, Jr., LEATH BOUCH & SEEKINGS, LLP, Charleston, South Carolina; Phillip W. Segui, Jr., Amanda Morgan Blundy, SEGUI LAW FIRM, PC, Mount Pleasant, South Carolina, for Appellees.

DIAZ, Circuit Judge:

Roger and Mary Jo Carlson signed a sales agreement with PulteGroup, Inc. and its subsidiary Del Webb Communities, Inc. (together, "Pulte") for the purchase of a lot and construction of a home in Hilton Head, South Carolina. The agreement contained an arbitration clause. This appeal stems from the Carlsons' attempt to arbitrate class-action claims against Pulte under the agreement, and Pulte's efforts to limit arbitration to the claims between the three parties. The district court held that the availability of class arbitration under an arbitration agreement is a procedural question for the arbitrator to decide, rather than a question for the court.

Because the primary goal in enforcing an arbitration agreement is to discern and honor party intent, and because of the fundamental differences between bilateral and class arbitration—which change the nature of arbitration altogether—we hold that whether parties agree to class arbitration is a gateway question for the court. Accordingly, we reverse the district court's order denying Pulte's motion for partial summary judgment, vacate the judgment dismissing Pulte's petition, and remand the case for the district court to determine whether the arbitration clause permits class arbitration.

The relevant facts are not in dispute. The Carlsons signed the sales agreement at issue in March of 2002. Section 4.3 of the agreement contains an arbitration clause that, in relevant part, states:

> Any controversy or claim arising out of or relating to this Agreement or Your purchase of the Property shall be finally settled by arbitration . . . .
>
> After Closing, every controversy or claim arising out of or relating to this Agreement, or the breach thereof shall be settled by binding arbitration as provided by the South Carolina Uniform Arbitration Act. . . . The rules of the American Arbitration Association (AAA), published for construction industry arbitrations, shall govern the arbitration proceeding and the method of appointment of the arbitrator.
>
> . . . .
>
> Any party to this Agreement may bring action . . . to compel arbitration . . . .

J.A. 34–35.

In September 2008, the Carlsons filed suit in South Carolina state court against Pulte and two other parties. The complaint raised several claims, all regarding alleged construction defects. The Carlsons later moved to amend their complaint to add class-action allegations because their lawsuit was one of approximately 140 like cases pending against Pulte. The state court granted the motion over Pulte's objection.

Pulte then moved to dismiss the amended complaint, or in the alternative, to compel bilateral arbitration of the Carlsons' claims. The state court denied both motions, but the South Carolina Court of Appeals reversed, finding the Carlsons' claims subject to arbitration under the sales agreement with Pulte. Carlson v. S.C. State Plastering, LLC, 743 S.E.2d 868, 875 (S.C. Ct. App. 2013).

The Carlsons subsequently filed a demand for arbitration with the American Arbitration Association (AAA). Their demand sought class arbitration and class certification, and set the claim amount at $75,000 "until such time as the Class is certified." J.A. 86. The class size, as identified in the demand for arbitration and attached amended complaint, accounts for approximately 2,000 homes—significantly more than the 140 or so similar claims pending against Pulte when the Carlsons moved to proceed as a class.

On May 6, 2014, the AAA manager held a conference call with the Carlsons and Pulte. During the call, the manager notified the parties that the arbitrator would decide whether the sales agreement permits class arbitration.

Three days later, Pulte filed in federal court a Petition and Complaint to Compel Bilateral Arbitration ("Petition") under § 4 of the Federal Arbitration Act (FAA), 9 U.S.C. § 1 et seq. As relevant here, Pulte argued that whether the sales agreement

4

authorizes class arbitration is a question of arbitrability for the court to determine—not a procedural question for the arbitrator. Pulte sought a declaratory judgment that the parties did not agree to class arbitration.

Between May 2014 and March 2015, the parties filed several motions in the district court, including Pulte's motion for partial summary judgment that is the subject of this appeal. In the meantime, the arbitrator ruled that the sales agreement authorized class arbitration, but he stayed the matter for the resolution of the federal litigation. Subsequent motions in the district court and this court resulted in a stay of the arbitration proceedings pending this appeal.

The district court denied Pulte's partial summary judgment motion and dismissed the Petition. Relying on the Supreme Court's plurality decision in Greentree Financial Corp. v. Bazzle, 539 U.S. 444 (2003), and this court's unpublished decision in Davis v. ECPI College of Technology, L.C., 227 F. App'x 250 (4th Cir. 2007), the court reasoned that whether the arbitration clause permits class arbitration is a simple contract interpretation issue, and because the question "concerns the procedural arbitration mechanisms available to the Carlsons," the threshold inquiry is a question for the arbitrator rather than for the court. Del Webb Cmtys., Inc. v. Carlson, No. 9:14-cv-01877-SB, at 7 (D.S.C. Mar. 25, 2015).

This appeal followed.

## II.

We review a district court's grant of summary judgment de novo.  Thompson v. Aluminum Co. of Am., 276 F.3d 651, 656 (4th Cir. 2002).

## A.

We turn first to the Carlsons' contention that we should dismiss the appeal—and that the district court should have dismissed the Petition—for lack of subject-matter jurisdiction.

The Carlsons first challenge Pulte's assertion of diversity jurisdiction, contending that the amount-in-controversy requirement is not met and that the parties are not geographically diverse.  We, however, are satisfied that the district court had diversity jurisdiction.[1]  "In considering a suit to compel arbitration, the question of jurisdictional amount may be determined by reference to the possible award resulting from the requested arbitration."  Delta Fin. Corp. v. Paul D. Comanduras & Assocs., 973 F.2d 301, 304 (4th Cir. 1992).  The Carlsons' amended complaint and demand for arbitration, together, provide that the value of their individual claim is

---

[1] The Carlsons complain (incorrectly) that the district court never explained why it had jurisdiction over the Petition. During a hearing on July 8, 2014, the district court denied the Carlsons' motion to dismiss for lack of jurisdiction and explained the grounds for its ruling.

6

$75,000, plus treble damages and attorneys' fees, which satisfies the statutory floor. See 28 U.S.C. § 1332(a); Francis v. Allstate Ins. Co., 709 F.3d 362, 368 (4th Cir. 2013) (stating that attorneys' fees count towards the amount-in-controversy calculation when the contract provides for them); J.A. 40 (providing in sales agreement that award of attorneys' fees goes to the prevailing party). Moreover, the parties are completely diverse, as the Carlsons are South Carolina citizens, and the Pulte parties are Michigan and Arizona citizens. See 28 U.S.C. § 1332(a)(1); Home Buyers Warranty Corp. v. Hanna, 750 F.3d 427, 433 (4th Cir. 2014).

The Carlsons, however, resist this conclusion on the ground that South Carolina State Plastering, LLC ("SCSP"), a defendant named in the original state court complaint, is a South Carolina citizen. But SCSP is not a party to the federal proceedings, and its citizenship is therefore irrelevant. Further, SCSP did not agree to arbitrate with the Carlsons and is not a party to the underlying arbitration. See Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 20 (1983) (calling for piecemeal resolution in different forums of a dispute when the plaintiff has an arbitration agreement with some defendants and not others because "an arbitration agreement must be enforced notwithstanding the presence of other persons who are parties to the underlying dispute but not to the arbitration agreement").

7

We also conclude that the district court had jurisdiction under the Class Action Fairness Act of 2005 (CAFA), which provides that a district court has original jurisdiction over class actions with an amount in controversy greater than $5,000,000 and in which "any member of a class of plaintiffs is a citizen of a State different from any defendant." 28 U.S.C. § 1332(d)(2)(A). To determine federal jurisdiction over an FAA § 4 petition, the court "may 'look through' [the] petition to determine whether it is predicated on an action that 'arises under' federal law." Vaden v. Discover Bank, 556 U.S. 49, 62 (2009) (determining jurisdiction over a petition to compel arbitration of class-action claims); see also 9 U.S.C. § 4 (providing that a petition to compel arbitration is proper in federal court when the court "would have jurisdiction under title 28 . . . of a suit arising out of the controversy between the parties").

Jurisdiction under CAFA, then, depends on the underlying substantive controversy—here, the putative class action. And in "looking through" Pulte's FAA petition, we find federal jurisdiction would be proper. Vaden, 556 U.S. at 62. As discussed, Pulte and the Carlsons are completely diverse, and the Carlsons have made class-action allegations.[2] Although Pulte

---

[2] Again relying on SCSP's South Carolina citizenship, the Carlsons urge that the district court should have dismissed the Petition under an exception to CAFA, which requires district

8

seeks only bilateral arbitration, the substantive matter currently in arbitration has an amount in controversy exceeding $5,000,000: the amended complaint attached to the Carlsons' demand for arbitration alleged claims "encompass[ing] thousands of houses," and the demand for arbitration valued the Carlsons' claim alone at $75,000, J.A. 4.

Next, the Carlsons assert that the Rooker–Feldman doctrine precludes federal jurisdiction over the matter because the issues presented in the Petition and on appeal were decided by the state courts. Under Rooker–Feldman, only the U.S. Supreme Court may review state court final judgments; a federal district court has no such authority. D.C. Ct. of App. v. Feldman, 460 U.S. 462, 482 (1983); Rooker v. Fid. Trust Co., 263 U.S. 413, 416 (1923). But the Supreme Court has since clarified—after we and several of our sister circuits interpreted the Rooker–Feldman doctrine broadly—that the doctrine "applies only when the loser in state court files suit in federal district court seeking redress for an injury allegedly caused by the state court's decision itself." Davani v. Va. Dep't of Transp., 434 F.3d 712, 713 (4th Cir. 2006) (citing Exxon Mobil Corp. v. Saudi Basic Indus. Corp., 544 U.S. 280 (2005)). Here, Pulte is not

---

courts to decline to exercise jurisdiction over a class action "in which . . . at least [one] defendant is a defendant . . . who is a citizen of the State in which the action was originally filed [i.e., South Carolina]." 28 U.S.C. § 1332(d)(4)(A)(i)(II)(cc). As discussed, SCSP's citizenship is immaterial to the underlying arbitration.

9

the state-court loser; when Pulte moved to compel arbitration in state court, the motion was ultimately granted. Moreover, the Petition does not challenge the state court decision. Rather, it disputes the availability of class arbitration under the sales agreement and the proper forum for deciding that issue, questions that were never litigated in the state court.[3]

Last, the Carlsons argue that Pulte cannot establish federal subject-matter jurisdiction through the FAA. Pulte, however, has never contended that the district court had federal question jurisdiction based on the FAA, acknowledging, as it must, that the FAA "does not create any independent federal-question jurisdiction" but rather only permits the federal district court to compel arbitration when the court "would have jurisdiction over a suit on the underlying dispute," through "diversity of citizenship or some other independent basis." Moses H. Cone, 460 U.S. at 25 n.32.

At oral argument, the Carlsons pressed the purported jurisdictional defect, arguing for the first time that Pulte is not an aggrieved party under the FAA because the statute provides a remedy only where a party is "aggrieved by the alleged failure, neglect, or refusal of another to arbitrate

---

[3] We reject the Carlsons' assertion that these questions were decided by the South Carolina Court of Appeals. That court found that the claims alleged by the Carlsons in their complaint should be arbitrated, but it said nothing about the issue of class-wide arbitration.

10

under a written agreement for arbitration." 9 U.S.C. § 4. The Carlsons' contention, however, does not implicate the district court's subject-matter jurisdiction. Rather, it is a question of statutory standing, Discover Bank v. Vaden, 489 F.3d 594, 607 n.20 (4th Cir. 2007), overruled on other grounds by 556 U.S. 49 (2009), which the Carlsons waived by failing to raise the point in the district court, see, e.g., Merrimon v. Unum Life Ins. Co. of Am., 758 F.3d 46, 53 n.3 (1st Cir. 2014) ("[A]rguments based on statutory standing, unlike arguments based on constitutional standing, are waivable.").

In any case, Pulte has statutory standing. The "central or 'primary' purpose of the FAA is to ensure that 'private agreements to arbitrate are enforced according to their terms,'" and a party may not be forced to submit to class arbitration absent express agreement. Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp., 559 U.S. 662, 682, 684 (2010) (quoting Volt Info. Scis., Inc. v. Bd. of Trustees of Leland Stanford Junior Univ., 489 U.S. 468, 479 (1989)). Here, Pulte is sufficiently aggrieved under § 4 by the alleged refusal of the Carlsons to arbitrate bilaterally, as required under the written agreement. Cf. Puleo v. Chase Bank USA, N.A., 605 F.3d 172, 181 (3d Cir. 2010) (en banc) (rejecting appellants' non-arbitrability argument that they "are amenable to arbitration in the abstract" because "a district court does not issue an order compelling

11

arbitration in the abstract[; r]ather, . . . § 4 of the FAA 'confers only the right to obtain an order directing that "arbitration proceed in the manner provided for in [the parties'] agreement"'" (alteration in original) (quoting Volt, 489 U.S. at 475)).

Accordingly, we deny the Carlsons' request that we dismiss the appeal for lack of subject matter jurisdiction.

B.

The district court denied Pulte's motion for partial summary judgment, concluding that the inquiry—whether an arbitration clause permits class arbitration—is procedural and therefore for the arbitrator. We disagree and hold that whether an arbitration clause permits class arbitration is a gateway question of arbitrability for the court.

Under the FAA, arbitration agreements are "valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. Despite this "liberal . . . . federal policy favoring arbitration," Moses H. Cone, 460 U.S. at 24, the FAA seeks to enforce arbitration agreements "in the manner provided for in such agreement," § 4; see Stolt-Nielsen, 559 U.S. at 682.

The Supreme Court has reiterated the contractual nature of arbitration agreements, careful to avoid forcing parties to resolve their disputes through means not intended at the time of

12

contract formation. E.g., Stolt-Nielsen, 559 U.S. at 681 ("[T]he FAA imposes certain rules of fundamental importance, including the basic precept that arbitration 'is a matter of consent, not coercion.'" (quoting Volt, 489 U.S. at 479)); Howsam v. Dean Witter Reynolds, Inc., 537 U.S. 79, 83 (2002) ("[A]rbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." (quoting United Steelworkers of Am. v. Warrior & Gulf Nav. Co., 363 U.S. 574, 582 (1960))); First Options of Chi., Inc. v. Kaplan, 514 U.S. 938, 945 (1995) ("[A] party can be forced to arbitrate only those issues it specifically has agreed to submit to arbitration . . . .").

Advancing the prioritization of party intent in arbitration agreements, the Supreme Court has identified two categories of threshold questions—procedural questions for the arbitrator, and questions of arbitrability for the court. See Howsam, 537 U.S. at 83–84. Procedural questions arise once the obligation to arbitrate a matter is established, and may include such issues as the application of statutes of limitations, notice requirements, laches, and estoppel. See id. at 85; see also John Wiley & Sons, Inc. v. Livingston, 376 U.S. 543, 557 (1964) ("Once it is determined . . . that the parties are obligated to submit the subject matter of a dispute to arbitration, 'procedural' questions which grow out of the dispute and bear on

13

its final disposition should be left to the arbitrator."). The Court has explained that these are questions for the arbitrator not only because the "parties would likely expect that an arbitrator would decide [them]," Howsam, 537 U.S. at 84, but also because the questions do not present any legal challenge to the arbitrator's underlying power, see AT&T Techs., Inc. v. Commc'ns Workers of Am., 475 U.S. 643, 648–49 (1986); United Steelworkers, 363 U.S. at 582–83.

Questions of arbitrability, on the other hand, are something else entirely. When the answer to a question "determine[s] whether the underlying controversy will proceed to arbitration on the merits," that question necessarily falls within the "narrow circumstance[s]" of arbitrable issues for the court to decide. Howsam, 537 U.S. at 83; see also Rent-A-Center, W., Inc. v. Jackson, 561 U.S. 63, 78 (2010) ("'[Q]uestion[s] of arbitrability' thus include questions regarding the existence of a legally binding and valid arbitration agreement, as well as questions regarding the scope of a concededly binding arbitration agreement." (alterations in original)).

The Supreme Court has not conclusively told us who gets to decide whether an arbitration agreement provides for class arbitration, but the Court has provided some guidance. First, although a plurality of the Court in Green Tree Financial Corp.

14

v. Bazzle found that the issue was a procedural one for the arbitrator, 539 U.S. at 452–53, the Court's treatment of Bazzle in subsequent decisions has effectively disavowed that rationale, see Oxford Health Plans LLC v. Sutter, 133 S. Ct. 2064, 2068 & n.2 (2013) (explaining the high bar for overturning an arbitrator's decision on the grounds that he exceeded his powers, but stating, "We would face a different issue if [the petitioner] had argued below that the availability of class arbitration is a so-called 'question of arbitrability.' Those questions . . . are presumptively for courts to decide."); Stolt-Nielsen, 559 U.S. at 680 ("Unfortunately, the opinions in Bazzle appear to have baffled the parties in this case . . . . [T]he parties appear to have believed that the judgment in Bazzle requires an arbitrator, not a court, to decide whether a contract permits class arbitration. In fact, however, only the plurality decided that question." (emphasis added) (citation omitted)).

Second, the Court over several decades has crafted legal rules regarding the interpretation of arbitration agreements, which, together, demonstrate that the issue presented here is one of arbitrability. To begin with, it is well established that whether the parties have submitted a particular dispute to arbitration is "undeniably an issue for judicial determination[] [u]nless the parties clearly and unmistakably provide

15

otherwise." AT&T Techs., 475 U.S. at 649; see also John Wiley, 376 U.S. at 547 ("[W]hether or not [a party] [i]s bound to arbitrate, as well as what issues it must arbitrate, is a matter to be determined by the Court on the basis of the contract entered into by the parties." (quoting Atkinson v. Sinclair Ref. Co., 370 U.S. 238, 241 (1962))).

In First Options of Chicago, Inc. v. Kaplan, the Court extended this rule to the determination of who has the primary power—the arbitrator or the court—to decide whether the parties delegated a question of arbitrability to arbitration, stating that "[c]ourts should not assume that the parties agreed to arbitrate arbitrability" absent "'clea[r] and unmistakabl[e]' evidence." 514 U.S. at 944 (alterations in original) (quoting AT&T Techs., 475 U.S. at 649).

The Court in Stolt-Nielsen S.A. v. AnimalFeeds International Corp. took its refusal to "'force unwilling parties to arbitrate' contrary to their expectations" one step further. 559 U.S. at 686 (quoting First Options, 514 U.S. at 945). There, it announced a rule for determining whether an arbitration agreement permits class arbitration. The Court found that "class-action arbitration changes the nature of arbitration to such a degree that it cannot be presumed the parties consented to it by simply agreeing to submit their disputes to an arbitrator." Id. at 685. Rather, the Court held

16

that parties cannot be forced to arbitrate on a class-wide basis absent "a contractual basis for concluding that the party agreed to do so." Id. at 684.

The evolution of the Court's cases are but a short step away from the conclusion that whether an arbitration agreement authorizes class arbitration presents a question as to the arbitrator's inherent power, which requires judicial review. In that regard, the Court has highlighted the significant distinctions between class and bilateral arbitration, and these fundamental differences confirm that whether an agreement authorizes the former is a question of arbitrability.

When parties agree to forgo their right to litigate in the courts and in favor of private dispute resolution, they expect the benefits flowing from that decision: less rigorous procedural formalities, lower costs, privacy and confidentiality, greater efficiency, specialized adjudicators, and—for the most part—finality. These benefits, however, are dramatically upended in class arbitration, which brings with it higher risks for defendants. See Stolt-Nielsen, 559 U.S. at 686–87 (contrasting the high stakes of class-action arbitration with its limited scope of judicial review).

In litigation, certification decisions may be appealed on both an interlocutory basis and after a final judgment, and the appellate court reviews questions of law de novo and factual

findings for clear error. E.g., Teamsters Local 445 Freight Div. Pension Fund v. Bombardier Inc., 546 F.3d 196, 201 (2d Cir. 2008). The FAA, however, provides very limited grounds for vacating an arbitration award. See 9 U.S.C. § 10 (providing grounds, such as: an award "procured by corruption, fraud, or undue means;" and when the arbitrator evidences "partiality or corruption," is "guilty of misconduct" or "other misbehavior" that prejudices the party's rights, or "exceed[s] [his or her] powers"). A reviewing court's ability to modify or correct an award is similarly cabined. See 9 U.S.C. § 11. And the FAA has been interpreted to prohibit parties from contractually expanding the scope of judicial review. See Hall St. Assocs., L.L.C. v. Mattel, Inc., 552 U.S. 576 (2008).

As a result, "[t]he absence of multilayered review" in arbitration "makes it more likely that errors will go uncorrected." AT&T Mobility LLC v. Concepcion, 563 U.S. 333, 350 (2011). This is a cost that "[d]efendants are willing to accept" in bilateral arbitration "since [the errors'] impact is limited to the size of individual disputes, and presumably outweighed by savings from avoiding the courts." Id. But "bet[ting] the company" without effective judicial review is a cost of class arbitration that defendants would not lightly accept. Id. at 351.

Moreover, in bilateral arbitration, the lack of rigorous procedural rules greatly increases the speed and lowers the cost of the dispute resolution, but in class arbitration, procedural formality is required, reducing—or eliminating altogether—these advantages. This is because the arbitrator must determine, before ruling on the merits, whether to certify the class, whether the named parties satisfy mandatory standards of representation and commonality, how discovery will function, and how to bind absent class members. Concepcion, 563 U.S. at 348–49. In turn, costs and time increase. See id. (finding that the average bilateral arbitration begun between January and August 2007 reached a final disposition in four-to-six months, whereas none of the class arbitrations initiated as of September 2009 had resulted in a final merits award, and the average time from filing to resolution—through settlement, withdrawal, or dismissal, not judgment on the merits—was 630 days).

It is not surprising then that those circuit courts to have considered the question have concluded that, "unless the parties clearly and unmistakably provide otherwise," whether an arbitration agreement permits class arbitration is a question of arbitrability for the court. Reed Elsevier, Inc. ex rel. LexisNexis Div. v. Crockett, 734 F.3d 594, 597–99 (6th Cir. 2013) (quoting Howsam, 537 U.S. at 83) (reasoning that the Supreme Court "has given every indication, short of an outright

19

holding, that classwide arbitrability is a gateway question" for the court, and focusing on Stolt-Nielsen and Concepcion's observations of the fundamental differences between bilateral and class arbitration); see also Opalinski v. Robert Half Int'l Inc., 761 F.3d 326, 331–34, 335-36 (3d Cir. 2014) (finding that the Supreme Court had "cast doubt" on the Bazzle plurality, and that an agreement's authorization of class arbitration implicates both whose claims and the type of controversy an arbitrator may resolve).

Leaving the question of class arbitration for the court also flows logically from our own cases. In Central West Virginia Energy, Inc. v. Bayer Cropscience LP, for example, we stated (albeit in dicta) that "consent to class arbitration did not fall within [the] category of 'procedural' questions . . . . because the class-action construct wreaks 'fundamental changes' on the 'nature of arbitration.'" 645 F.3d 267, 274–75 (4th Cir. 2011) (quoting Stolt-Nielsen, 559 U.S. at 685–86). Since then, at least two district judges in this circuit have held that whether an agreement permits class arbitration is a question of arbitrability for the court. See Chesapeake Appalachia, LLC v. Suppa, 91 F. Supp. 3d 853, 861 (N.D.W. Va. 2015); Bird v. Turner, No. 5:14CV97, slip. op. at *7 (N.D.W. Va. Sept. 1, 2015).

A review of the kinds of disputes we have found to be procedural in nature shows that our decision today aligns with circuit precedent. E.g., Bayer Cropscience, 645 F.3d at 274 (whether an arbitration panel in Richmond, Virginia, or in Charleston, West Virginia, should resolve the dispute); Dockser v. Schwartzberg, 433 F.3d 421 (4th Cir. 2006) (the question of the number of arbitrators); Durham Cty. v. Richards & Assocs., 742 F.2d 811 (4th Cir. 1984) (limitations period expressed in arbitration agreement raised as defense to arbitration); In re Mercury Constr. Corp., 656 F.2d 933 (4th Cir. 1981) (en banc) (whether untimeliness, waiver, or laches were for the arbitrator or court's determination), aff'd sub nom. Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp., 460 U.S. 1.

Most notably, these decisions do not challenge the underlying agreement to submit the dispute to arbitration. See Marrowbone Dev. Co. v. Dist. 17, United Mine Workers of Am., 147 F.3d 296, 300 (4th Cir. 1998) ("[T]he court decides, as issues of contract law, the threshold questions of whether a party is contractually bound to arbitrate and whether, if so bound, the arbitration provision's scope makes the issue in dispute arbitrable."). Further, we have made clear that the scope of arbitrability itself is not an issue presumptively for the arbitrator to decide. See Va. Carolina Tools, Inc. v. Int'l Tool Supply, Inc., 984 F.2d 113, 117 (4th Cir. 1993) (finding

21

both that "except as clearly and unmistakably indicated in their contract, the parties d[o] not intend to commit the very issue of the scope of arbitrability itself to arbitration," and that "the typical, broad arbitration clause" does not meet that standard).

In reaching its contrary result, the district court relied on our unpublished decision in Davis v. ECPI College of Technology, L.C., 227 F. App'x 250 (4th Cir. 2007). There, we found that "[t]he question of 'what kind of arbitration proceedings' are required under the arbitration clause is not a gateway issue for a court to decide." Id. at 253. But Davis was decided before Stolt-Nielsen, Concepcion, and Oxford Health Plans, and relied exclusively on the plurality in Bazzle. Given the thin reed that is now Bazzle, we decline to follow our unpublished precedent.

### III.

In this case, the parties did not unmistakably provide that the arbitrator would decide whether their agreement authorizes class arbitration. In fact, the sales agreement says nothing at all about the subject. Accordingly, the district court erred in concluding that the question was a procedural one for the arbitrator. We therefore reverse the district court's order denying Pulte's motion for partial summary judgment, vacate the

22

judgment dismissing the Petition, and remand for further proceedings.  On remand, the district court shall determine whether the parties agreed to class arbitration.

REVERSED, VACATED, AND REMANDED