**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

───────────

**No. 24-1707**

───────────

T.M.; J.M.; A.M.,

        Plaintiffs – Appellants,

v.

UNIVERSITY OF MARYLAND MEDICAL SYSTEM CORPORATION; BALTIMORE WASHINGTON MEDICAL CENTER INCORPORATED; KATHLEEN MCCOLLUM, in her official capacity as President and CEO of Baltimore Washington Medical Center, Inc.; THOMAS J. CUMMINGS, JR., in his personal and official capacity as a medical professional at Baltimore Washington Medical Center, Inc.,

        Defendants – Appellees,

and

BE-LIVE-IT THERAPY LLC, trading as Family Intervention Partners; ANNE ARUNDEL COUNTY, operating as the Anne Arundel Crisis Intervention Team,

        Defendants.

───────────

Appeal from the United States District Court for the District of Maryland, at Baltimore. Stephanie A. Gallagher, District Judge. (1:23-cv-01684-SAG)

───────────

Argued: March 20, 2025                               Decided: June 4, 2025

───────────

Before WYNN, RICHARDSON, and HEYTENS, Circuit Judges.

───────────

Affirmed in part, vacated in part, and remanded with instructions. Judge Heytens wrote the opinion, which Judge Wynn and Judge Richardson joined.

---

**ARGUED:** Ray M. Shepard, THE SHEPARD LAW FIRM, LLC, Pasadena, Maryland, for Appellants. Mark S. Saudek, GALLAGHER EVELIUS & JONES LLP, Baltimore, Maryland, for Appellees. **ON BRIEF:** Ella R. Aiken, Rose C.A. Woolson, GALLAGHER EVELIUS & JONES LLP, Baltimore, Maryland, for Appellees.

---

2

TOBY HEYTENS, Circuit Judge:

In 2005, the Supreme Court warned that lower courts had wrongly "construed" the *Rooker-Feldman* doctrine "to extend far beyond the contours of the *Rooker* and *Feldman* cases." *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 283 (2005). This Court got the message: In the two decades since, we have never, "in a published opinion, held that a district court lacked subject matter jurisdiction under the *Rooker-Feldman* doctrine." *Thana v. Board of License Comm'rs for Charles Cnty.*, 827 F.3d 314, 320 (4th Cir. 2016); see also *Jonathan R. by Dixon v. Justice*, 41 F.4th 316, 340 (4th Cir. 2022). That streak ends today. While remaining mindful of the need to avoid "overriding Congress' conferral of federal-court jurisdiction concurrent with jurisdiction exercised by state courts," *Exxon*, 544 U.S. at 283, we conclude this case is too much like *Rooker* to justify a different result.

We affirm the district court's judgment dismissing plaintiff T.M.'s claims for lack of subject matter jurisdiction and the other two plaintiffs' claims for failure to state a claim on which relief may be granted. We do, however, vacate the district court's dismissal of T.M.'s claims with prejudice and remand with instructions to modify the judgment to dismiss those claims without prejudice.

I.

The complaint alleges that T.M. has a medical condition that "causes changes in [her] mental status upon ingesting any amount of gluten" and can result in "episodes of psychosis." JA 19–20. After one such episode in 2023, T.M. was taken to the emergency room at Baltimore Washington Medical Center. Although T.M. and her father asked to

3

have T.M. voluntarily admitted to the facility, T.M. was involuntarily committed after an administrative hearing.

T.M.'s treating psychiatrist sought permission to forcibly inject T.M. with antipsychotic medication, which required approval from a clinical review panel. The panel approved the psychiatrist's request, and a Maryland administrative law judge affirmed the panel's decision after a hearing. Seeking to avoid forcible injection and secure her release from involuntary commitment, T.M. filed several lawsuits in state and federal court. Among them was a habeas action filed in Maryland state court.

While that habeas action was ongoing, T.M. and the medical center reached an oral agreement to release T.M. so long as she abided by certain conditions. That oral agreement was reflected in a written document that the judge in the habeas action signed and entered as a consent order. The consent order provided for T.M.'s immediate release from the medical center but required her to switch psychiatrists, continue taking medications prescribed by the hospital, and dismiss with prejudice her other lawsuits against the medical center and its employees. The consent order also directed T.M.'s parents (plaintiffs A.M. and J.M.) to encourage T.M. to take her medications and notify a particular mental health facility and a county mental health crisis team if she stopped doing so. The consent order was entered in the habeas action, and T.M. was then released.

Ten days after the state court entered the consent order, T.M. and her parents filed this lawsuit in federal court claiming "that the 'Consent Order'" is "unconstitutional, unenforceable, and void *ab initio*." JA 48. The complaint asserts that "[t]he conditions to which T.M. was forced to agree to obtain her freedom in the 'Consent Order' are patently

4

unconstitutional," and that "[e]nforcement of the 'Consent Order' in this case would require the State court to continue to deprive T.M. of her most fundamental right": "to determine what shall be done with [her] own body." JA 45, 47. It further alleges that T.M.'s agreed to the consent order "under duress." JA 44. The prayer for relief reads in full:

> WHEREFORE, Plaintiffs pray that this Honorable Court grant the following relief:
>
> a)  Declare that the "Consent Order" violates the Maryland Declaration of Rights and the Due Process clause of the Fourteenth Amendment and is therefore unconstitutional, unenforceable, and void *ab initio*; and
>
> b)  Declare further that the "Consent Order" is also void and unenforceable because it was obtained under duress while T.M. faced the prospect of further unlawful confinement and forced injections of antipsychotic drugs; and
>
> c)  Grant preliminary and permanent injunctive relief preventing enforcement of the "Consent Order;" and
>
> d)  Grant any other further relief that this Honorable Court deems to be just and proper.

JA 48–49.

The district court dismissed the complaint. The court determined that T.M.'s claims were barred by the *Rooker-Feldman* doctrine and that it thus lacked subject matter jurisdiction over them. The court concluded the parents' claims failed on the merits because "they have failed to state plausible claims for relief in their Complaint." JA 110. The court dismissed T.M.'s claims with prejudice and the parents' claims without prejudice.

## II.

The district court correctly dismissed T.M.'s claims for lack of subject matter

5

jurisdiction under the *Rooker-Feldman* doctrine.

### A.

The Constitution creates "one supreme Court" and grants it "appellate Jurisdiction" over particular categories of cases "with such Exceptions, and under such Regulations as the Congress shall make." U.S. Const. art. III, §§ 1, 2. The Supreme Court's appellate jurisdiction includes the ability to review state court judgments. See, *e.g.*, *Martin v. Hunter's Lessee*, 14 U.S. 304, 327–60 (1816). That power is codified in 28 U.S.C. § 1257(a), which says the Supreme Court "may . . . review[ ]" "[f]inal judgments or decrees rendered by the highest court of a State in which a decision could be had" in situations "where any title, right, privilege, or immunity is specially set up or claimed under the [Federal] Constitution."

In contrast, Article III neither creates lower federal courts nor describes the nature or scope of their jurisdiction. For that reason—at least as a general matter—lower federal courts "can have no jurisdiction but such as [a] statute confers." *Sheldon v. Sill*, 49 U.S. 441, 449 (1850). Congress has given federal district courts "original jurisdiction" over "civil actions arising under the Constitution, laws, or treaties of the United States," 28 U.S.C. § 1331, and federal courts of appeals "jurisdiction" to hear "appeals from all final decisions of the district courts of the United States," § 1291. It has also given district courts appellate jurisdiction over various orders by bankruptcy courts. See § 158(a). But no federal statute "authorize[s] district courts to exercise appellate jurisdiction over state-court judgments," even those that raise issues of—or are alleged to violate—federal law. *Verizon Md., Inc. v. Public Serv. Comm'n of Md.*, 535 U.S. 635, 644 n.3 (2002).

6

The *Rooker-Feldman* doctrine reflects and preserves that distribution of authority between the Supreme Court and lower federal courts. In *Rooker v. Fidelity Trust Co.*, 263 U.S. 413 (1923), the plaintiff asked a federal district court to "declare[]" that an Indiana state court's judgment was "null and void" because it had been "rendered and affirmed in contravention of" the Federal Constitution. *Id.* at 414–15. The district court ruled it lacked jurisdiction over the plaintiff's claim, and the Supreme Court affirmed. See *id.* at 415–17. The Court explained that, under the federal jurisdictional statutes, "no court of the United States other than this court could entertain a proceeding to reverse or modify the [state-court] judgment" because "[t]o do so would be an exercise of appellate jurisdiction." *Id.* at 416; see *Lance v. Dennis*, 546 U.S. 459, 463 (2006) (per curiam) (describing *Rooker* as viewing the plaintiff's request for relief as "tantamount to an appeal of the Indiana Supreme Court decision").

Similarly, in *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462 (1983), two plaintiffs argued that the District of Columbia's highest court violated the Federal Constitution by denying their requests to be admitted to the D.C. bar without having attended an approved law school. See *id.* at 468–69 & n.3, 472. The Supreme Court held that "to the extent that" the plaintiffs were asking a federal district court to "review" the D.C. court's "denial of their petitions for waiver," the district court "lacked subject matter jurisdiction" because "[r]eview of such determinations c[ould] be obtained only in [the Supreme] Court." *Id.* at 476, 482.

Over time, the *Rooker-Feldman* doctrine "lent itself to broad expansion." *RLR Investments, LLC v. City of Pigeon Forge*, 4 F.4th 380, 385 (6th Cir. 2021). Lower federal

7

courts (including this one) applied *Rooker-Feldman* "as a one-size-fits-all preclusion doctrine," dismissing suits "whenever state court decisions and federal court decisions potentially or actually overlap[ped]." *Behr v. Campbell*, 8 F.4th 1206, 1208 (11th Cir. 2021) (first quote); *RLR Investments, LLC*, 4 F.4th at 385 (quotation marks removed) (second quote). In so doing, the doctrine "became a quasi-magical means of docket-clearing." Stephen I. Vladeck, *The Increasingly "Unflagging Obligation": Federal Jurisdiction After* Saudi Basic *and Anna Nicole*, 42 Tulsa L. Rev. 553, 563 (2007).

In *Exxon*, the Supreme Court ordered a course correction. The *Rooker-Feldman* doctrine, the Court explained, is not a "preclusion doctrine," nor does it "stop a district court from exercising subject-matter jurisdiction simply because a party attempts to litigate a matter previously litigated in state court." *Exxon*, 544 U.S. at 284, 293. Instead, the Court emphasized, the doctrine "is confined to cases of the kind from which the doctrine acquired its name: cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." *Id.* at 284.

B.

This case bears an uncanny resemblance to *Rooker*. Here—as in *Rooker*—T.M. sued in federal district court complaining about a state court judgment. Compare JA 48–49, with *Rooker*, 263 U.S. at 414. Here—as in *Rooker*—T.M. argued that the state court judgment itself violated the Federal Constitution. Compare JA 48, with *Rooker*, 263 U.S. at 414–15. And here—as in *Rooker*—T.M. asked a federal district court to declare the state court judgment "void" and "unenforceable." JA 48; see *Rooker*, 263 U.S. at 414 (plaintiff asked

the federal district court to declare the state court judgment "null and void"). This case thus appears to present the "paradigm situation in which *Rooker-Feldman* precludes a federal district court from proceeding." *Exxon*, 544 U.S. at 293 (quotation marks removed).

This case also lacks any of the circumstances that led the Supreme Court to hold that the *Rooker-Feldman* doctrine did not apply in *Exxon*. To begin, here—unlike in *Exxon*—T.M. filed the relevant federal suit after the state court judgment she seeks to challenge had been entered. Compare JA 16 (stating that the consent order was entered 10 days before the complaint was filed), with *Exxon*, 544 U.S. at 289 (noting that the federal court action was filed more than two years before the state court's judgment). That difference matters. As *Exxon* explained, "neither *Rooker* nor *Feldman* supports the notion that properly invoked concurrent jurisdiction" of state and federal courts "vanishes if a state court reaches judgment on the same or related question while the case remains *sub judice* in a federal court." 544 U.S. at 292. But here—as in *Rooker* and *Feldman*—the "state-court judgment[]" T.M. asked the federal district court to enjoin was "rendered before the district court proceedings commenced." *Id.* at 284.

Just as important, T.M. *has* gone to federal court seeking "to undo" a state court judgment. *Exxon*, 544 U.S. at 293. Unlike the plaintiff in *Exxon*, T.M. did not sue in federal court because she sought to "protect [herself] in the event [she] lost in state court on grounds (such as the state statute of limitations) that might not preclude relief in the federal venue." *Id.* at 294. Nor did T.M. ask a federal court to relitigate issues that were previously decided in state court—a situation *Exxon* instructs is properly addressed via "principles of preclusion" rather than lack of subject matter jurisdiction. *Id.* at 293 (quotation marks

9

removed). Instead, T.M. "invit[ed] district court review and rejection" of a state court judgment, *id.* at 284, by asking the district court to declare the state court's order "unconstitutional, unenforceable, and void *ab initio*" and to "[g]rant preliminary and permanent injunctive relief preventing [its] enforcement," JA 48. That is what *Rooker*, *Feldman*, and *Exxon* all say federal district courts lack the authority to do.

## C.

T.M. does not meaningfully dispute anything we just said. Instead, she makes two sets of arguments. First, T.M. insists that three of the four conditions that *Exxon* identified for invoking the *Rooker-Feldman* doctrine are absent here. Second, T.M. seeks to expand the *Exxon* Court's statement of its own holding. We are not persuaded by either set of arguments.

## 1.

As previously noted, *Exxon* held that "[t]he *Rooker-Feldman* doctrine . . . is confined to cases" possessing four characteristics: those "[1] brought by state-court losers [2] complaining of injuries caused by state-court judgments [3] rendered before the district court proceedings commenced and [4] inviting district court review and rejection of those judgments." 544 U.S. at 284. T.M. never denies that the third requirement is satisfied here, and it plainly is given the timing of the two actions. And despite T.M.'s contrary assertions, we conclude the other three requirements are satisfied too.

## a.

*Exxon*'s first requirement is satisfied because T.M. is a "state-court loser" for purposes of the *Rooker-Feldman* doctrine. *Exxon*, 544 U.S. at 284.

10

*First*, we agree with the Seventh Circuit that T.M.'s status as a state court loser is not altered because the state court judgment she attacks is a consent order rather than one entered after an adversarial proceeding. A consent order "is a judgment for purposes of *Rooker-Feldman*." *Johnson v. Orr*, 551 F.3d 564, 568 (7th Cir. 2008); accord Wright & Miller, 18A Fed. Prac. & Proc. Juris. § 4443 (3d ed. 2025). This is because a consent order "transform[s]" a private settlement agreement "into a judgment" that governs the parties' future relationship with the force of judicial authority rather than merely as a matter of contract. Wright & Miller § 4443 & n.1. And when a litigant claims to have been "injured by [an] agreed order," asserts "that the state court's judgment was in error," and asks a federal district court to "overturn" that order, that litigant is a state court loser for *Rooker-Feldman* purposes. *Johnson*, 551 F.3d at 569.

We are satisfied this is the correct result because T.M. has available to her the same state court remedies as any other state court loser. If T.M. wishes to challenge the legality of the consent order, she can "ask the [state courts] to set" it "aside." *Johnson*, 551 F.3d at 569. Maryland law would have permitted T.M. to ask the state habeas court to set aside the consent order, see Md. R. 3-535(b), and to appeal that order if the state habeas court declined to do so, see *Pettiford v. Next Generation Tr. Serv.*, 226 A.3d 15, 27 (Md. 2020).[1] If those efforts proved unsuccessful, T.M. could seek review from the Supreme Court.

---

[1] These possibilities are not hypothetical. After filing this suit in federal court, T.M. also appealed the consent order to the Appellate Court of Maryland before seeking and obtaining a stay of that appeal pending the outcome of this one. As far as we know, that appeal remains pending.

11

See 28 U.S.C. § 1257(a). What T.M. may not do, however, is "avoid *Rooker-Feldman* simply by bypassing [the] state court[s]." *Johnson*, 551 F.3d at 569.

Our decision in *Del Webb Communities, Inc. v. Carlson*, 817 F.3d 867 (4th Cir. 2016), is not to the contrary. In that case, two buyers sued a seller in state court. *Id.* at 869. After the seller successfully moved to compel arbitration, the buyers filed a demand for class arbitration. *Id.* at 869–70. Before that question was resolved, the seller filed a suit in federal court seeking a declaratory judgment that the parties had not agreed to class arbitration. *Id.* at 870. We held that the seller was "not the state-court loser" because the only motion the seller ever filed in state court "was ultimately granted" *and* the federal court suit did "not challenge the state court decision." *Id.* at 872. In other words, the seller's federal suit neither asserted that any state court judgment was wrong nor sought to restrain the operation of any state court judgment. Here, by contrast, T.M. asserts that a preexisting state court judgment that she no longer wishes to be bound by is unconstitutional and asks a federal district court to enjoin its operation.

*Second*, we reject T.M.'s argument that she is not a state court loser because she "won in the [Maryland] Circuit Court on January 3, 2024 when Judge Pamela Albin ruled" that the medical center should not have involuntarily committed her in the first place. T.M. Br. 34. True, that ruling was a state court win. But that order is not the one T.M. now asserts is unconstitutional and asks a federal court to enjoin, nor was it even entered in the same underlying state court action. Instead, that order was entered in a different case, almost six months after the consent order that T.M. asked the district court to enjoin. Winning a different lawsuit whose result is not challenged here does not

12

transform T.M. into a state court winner in the case whose outcome she now seeks to attack. We thus conclude *Exxon*'s first requirement is satisfied.

b.

We have largely explained why *Exxon*'s second and fourth requirements are satisfied—that is, why T.M. is "complaining of injuries caused by" a state court judgment and seeks "district court review and rejection of" that judgment. *Exxon*, 544 U.S. at 284. The complaint asserts that "[t]he Consent Order"—not the defendants' conduct or even the underlying oral agreement—"imposes clearly unconstitutional limits on T.M.'s ability to control her own healthcare forever." JA 13; accord JA 45, 46 & n.9 (asserting that "the 'Consent Order'" forces T.M. "to continue to take the antipsychotic drug cocktails prescribed for her by" one of the named defendants, "purports to control T.M.'s healthcare decisions," and "effectively restricts T.M.'s ability to travel"). And although it may sometimes be difficult to determine whether a plaintiff is asking a district court to "review and reject[ ]" a state court judgment, *Exxon*, 544 U.S. at 284, "there's no complexity when the litigant directly asks a federal district court to declare a state-court order to be unconstitutional and enjoin its enforcement," *RLR Investments, LLC*, 4 F.4th at 388 (quotation marks removed). That is what T.M. has done here by asking the district court to "[d]eclare" that the consent order "violates the Maryland Declaration of Rights and the Due Process clause of the Fourteenth Amendment" and "[g]rant preliminary and permanent injunctive relief preventing [its] enforcement." JA 48.

On appeal, T.M. insists that this suit is really about injuries inflicted by the medical center rather than the consent order. That claim cannot be squared with the language of

13

T.M.'s complaint, which is the document we examine to determine the source of a plaintiff's alleged injury and whether they seek review of a state court judgment. See *RLR Investments, LLC*, 4 F.4th at 388. If this complaint were truly directed at injuries that have been or will be caused by the medical center, we would expect it to seek remedies addressing those harms, including damages or an injunction forbidding the medical center's employees from taking some further action. But the complaint here never "requests" any such forms of "relief." *Id.* Instead, aside from a concluding request for "any other further relief that this Honorable Court deems to be just and proper," the complaint seeks three forms of declaratory and injunctive relief directed against "the 'Consent Order'" and its "enforcement." JA 48–49.[2] Granting such relief would require enjoining the operation of the state court judgment—the precise remedy T.M. seeks to disclaim on appeal.

Shifting gears, T.M. also argues that this suit "seek[s] relief from a state administrative agency's determination that she could be lawfully committed involuntarily to [the medical center] under Maryland law." T.M. Br. 18. To be sure, the *Rooker-Feldman* doctrine would not have barred such a suit because state administrative decisions are "subject to challenge in an independent federal action" even if there is also a concurrent

---

[2] In contrast, T.M. filed two other federal court actions that sought damages from the medical center. The first suit was filed before the consent order was entered and was voluntarily dismissed as required by the consent order. See *Doe v. University of Md. Med. Sys., Corp.*, No. 23-cv-01572 (D. Md. complaint filed June 9, 2023). The second suit was filed after the consent decree was entered and was dismissed by a different federal district court judge for failure to state a claim. See *Doe v. University of Md. Med. Sys. Corp.*, No. 23-cv-03318, 2024 WL 4236671 (D. Md. Sept. 18, 2024).

14

state action seeking review of that same administrative decision. *Thana*, 827 F.3d at 320–21.[3] But for reasons that should be familiar by now, this suit is not such a "concurrent, independent action." *Id.* at 321. The complaint that the district court dismissed under the *Rooker-Feldman* doctrine did not ask the court to review any state administrative action, nor did it ask the district court to provide any remedy directed at the state agency. Once again, T.M.'s arguments on appeal cannot be squared with the language of her complaint. We thus hold that *Exxon*'s second and fourth requirements are satisfied.

2.

T.M.'s remaining arguments are not based on any of the four criteria the Supreme Court listed when describing its own holding in *Exxon*. See 544 U.S. at 284. Instead, T.M.'s final two arguments seek to restrict the applicability of the *Rooker-Feldman* doctrine beyond *Exxon*'s stated parameters. We are not persuaded by either argument.

a.

T.M. insists that *Rooker-Feldman* does not apply because the doctrine is limited to suits where a federal court is asked to "exercise appellate jurisdiction over a final judgment from the highest court of a State in which the decision could be had" and there is no such judgment here. T.M. Br. 27 (quotation marks removed). In support of that argument, T.M. points to the Supreme Court's statement in *Exxon* that "[i]n both [*Rooker* and *Feldman*] the losing party in state court filed suit in federal court after the state proceedings ended,"

---

[3] Indeed, T.M.'s first federal action also sought review of the state administrative judge's order affirming the clinical review panel's decision approving forcible injections. See note 2, *supra* (describing earlier federal court suits).

15

544 U.S. at 291, and dicta in one of our published opinions stating that "*if*" we were to "apply strictly" one clause from one sentence in *Exxon*, "we *would* conclude that" the *Rooker-Feldman* doctrine is limited in the way T.M. proposes, *Thana*, 827 F.3d at 321 (emphasis added).[4] But *Thana* never answered that question, so it remains open for us. See 827 F.3d at 322–23 (listing five "reasons supporting [the Court's] conclusion" and identifying a different one as "more fundamental"). Having carefully considered the matter—and acknowledging the contrary views of other circuits—we agree with the Sixth and Eighth Circuits that *Rooker-Feldman* is not limited to situations when a federal court plaintiff no longer has any recourse within the state system. See *RLR Investments, LLC*, 4 F.4th at 389–95; *Parker Law Firm v. Travelers Indem. Co.*, 985 F.3d 579, 584 (8th Cir. 2021); see also *RLR Investments, LLC*, 4 F.4th at 391–92 & n.6 (citing decisions reaching other views).

As noted several times already, the *Exxon* Court outlined the requirements for invoking the *Rooker-Feldman* doctrine at the beginning of its opinion in language prefaced by the words "we hold." 544 U.S. at 284. And when it did so, the Court did not say that the doctrine applied only to judgments issued by state high courts or judgments for which no

---

[4] T.M. errs in twice quoting *Jonathan R. by Dixon v. Justice*, 41 F.4th 316, 341 (4th Cir. 2022), as saying that the "*Rooker-Feldman* doctrine applies [only to final] state court decisions, not ongoing state court proceedings." T.M. Br. 10; see T.M. Reply Br. 4. The bracketed words "only to final" are not contained in either *Jonathan* or the one-paragraph unpublished decision that *Jonathan* quotes. Instead, the original language says *Rooker-Feldman* applies to "state court decisions" rather than "only to final state court decisions." *Jonathan*, 41 F.4th at 341 (quoting *Jones v. McBride*, No. 21-6218, 2022 WL 670873, at *1 (4th Cir. Mar. 7, 2022) (per curiam)).

16

further review could be had within the state system—it said "state-court judgments." *Id.*; see *RLR Investments, LLC*, 4 F.4th at 392 (noting that the Supreme Court has used the word "decision" in several post-*Exxon* cases). In contrast, the language on which T.M. relies came later in the Court's opinion, when it summarized *Rooker* and *Feldman* and explained why they both "exhibit the limited circumstances in which" the *Rooker-Feldman* doctrine operates. *Exxon*, 544 U.S. at 291. To be sure, the Court had stated seven pages earlier—in its "we hold" sentence—that "[t]he *Rooker-Feldman* doctrine . . . is confined to cases of the kind from which the doctrine acquired its name." *Id.* at 284. But that statement was immediately followed by a colon, after which the Court explained what it meant. *Id.* And as the Supreme Court has explained: "[T]he first rule of case law as well as statutory interpretation is: Read on." *Arkansas Game & Fish Comm'n v. United States*, 568 U.S. 23, 36 (2012). We thus conclude that *Exxon* does not mandate a stealth fifth requirement for invoking the *Rooker-Feldman* doctrine. See *RLR Investments, LLC*, 4 F.4th at 392–94; see also *Lance*, 546 U.S. at 464 (quoting *Exxon*'s "we hold" language verbatim, without listing any other requirements).

Nor does 28 U.S.C. § 1257(a)—the law that forms part of the basis for the *Rooker-Feldman* doctrine—require a different result. True, that statute only gives the Supreme Court appellate jurisdiction over decisions "rendered by the highest court of a State in which a decision could be had." 28 U.S.C. § 1257(a). But the fact that Congress declared that even our Nation's "one supreme Court" lacks appellate jurisdiction over state court decisions from which review may still be had within the State's own judicial system does not mean that "inferior [federal] Courts" somehow gain appellate jurisdiction over those

17

same decisions. U.S. Const. art. III, § 1. Instead, the combination of Section 1257(a) and Congress's failure to give lower federal courts any appellate jurisdiction over state court judgments means that *no* federal court has jurisdiction to review such decisions. See *Verizon Md.*, 535 U.S. at 644 n.3 ("The *Rooker-Feldman* doctrine merely recognizes that 28 U.S.C. § 1331 is a grant of original jurisdiction, and does not authorize district courts to exercise appellate jurisdiction over state-court judgments, which Congress has reserved to [the Supreme] Court.").

b.

T.M.'s final argument is that the portion of the complaint asserting she agreed to the consent order under duress should survive dismissal because that claim challenges "the process by which the state court decision[] resulted" rather than "the state court decision[]" itself. T.M. Br. 24 (quotation marks removed). Here too, we are unpersuaded.

T.M.'s argument leans heavily on the Second Circuit's decision in *Sung Cho v. City of New York*, 910 F.3d 639 (2018). In that case, a group of homeowners and businessowners sued in federal court, asserting that government attorneys brought state court eviction actions against them and then coerced them into entering "settlement agreements" waiving their constitutional rights. *Id.* at 641, 643–45. The Second Circuit held that the *Rooker-Feldman* doctrine did not bar the plaintiffs' suit, even though "each of the [settlement] agreements was 'so-ordered' by" state court judges without any other "state-court proceedings." *Id.* at 643. The court concluded that the plaintiffs' injuries had not been "*caused* by a state-court judgment"—*Exxon*'s second requirement—because an examination of the complaints revealed that the injuries about which the plaintiffs

18

complained flowed from "the *agreements themselves* and the conduct that led to them—not the judgments so-ordered by the state court." *Id.* at 646.

This case differs in critical respects. Unlike in *Sung Cho*, T.M.'s complaint does not allege that the parties ever signed a settlement agreement that became "legally binding" before and absent any court order, *Sung Cho*, 910 F.3d at 647, nor did T.M. attach any such document to the complaint. And despite a single reference to an "agreement," JA 46, we conclude that T.M.'s complaint cannot plausibly be read as attacking a settlement agreement that exists independently of the consent order.

A comparison between the remedies requested in *Sung Cho* and this case clinches the point. In *Sung Cho*, the homeowners asked the federal district court to grant relief against the "defendants" by "enjoin[ing] [them] from enforcing the [settlement] agreements, to declare the 'agreements exacted' to be 'unconstitutional, invalid, and unenforceable,' and to award nominal damages." 910 F.3d at 643–44. Here, in contrast, the only specific forms of relief requested in T.M.'s complaint all would act directly on "the 'Consent Order'" entered by the state habeas court. JA 48. We thus hold that the *Rooker-Feldman* doctrine bars the claims pled in T.M.'s complaint.[5]

---

[5] In her reply brief, T.M. insists that—despite what the complaint says—her real injury is "the coerced loss of her constitutional rights," which "arose from the settlement agreement itself." T.M. Reply Br. 4 (emphasis removed). But any suit seeking to remedy harms T.M. has already suffered would have to be for damages, not an injunction, see *City of Los Angeles v. Lyons*, 461 U.S. 95, 105 (1983), and—unlike the complaint in *Sung Cho*—the one we are reviewing here does not seek damages. As noted previously, T.M. filed two other complaints that did seek damages. See note 2, *supra*.

19

III.

We turn to the claims brought by T.M.'s parents. The *Rooker-Feldman* doctrine does not affect the district court's jurisdiction over those claims because the parents were not parties to the state habeas action, and *Rooker-Feldman* "has no application to a federal suit brought by a nonparty to the state suit." *Exxon*, 544 U.S. at 287. We nonetheless conclude that the district court correctly dismissed the parents' claims for failure to state a claim on which relief can be granted.

As they did before the district court, the parents argue that the consent order violates their First Amendment rights by compelling their speech. T.M. Br. 37–40. But as the district court noted, "these allegations—or any facts to support them—are missing from the [c]omplaint." JA 110. Although the plaintiffs' appellate brief block quotes several paragraphs from the complaint, the quoted language confirms that the complaint never asserts that the consent order violates the parents' First Amendment rights. This is unlike the case around which the plaintiffs build their entire argument on appeal—*Johnson v. City of Shelby*, 574 U.S. 10 (2014) (per curiam)—where the complaint expressly alleged "violations of [the plaintiffs'] Fourteenth Amendment due process rights." *Id.* at 10. Thus, the district court correctly concluded the parents failed to state a claim on which relief can be granted.[6]

---

[6] On appeal, the parents also argue that the complaint stated a valid claim that—regardless of whether the consent order violated their First Amendment rights—it could not be enforced against them because they were not parties to the habeas action. But the district court never considered that question, and, having reviewed the plaintiffs' opposition to the defendants' motion to dismiss, we conclude that the parents never raised (Continued)

20

\*   \*   \*

To say that few claims warrant dismissal under the *Rooker-Feldman* doctrine is not to say that none do, and we conclude that T.M.'s claims fit the bill. That said, because the *Rooker-Feldman* doctrine is one "of subject-matter jurisdiction," *Exxon*, 544 U.S. at 284, we vacate in part and remand with instructions to modify the judgment to state that T.M.'s claims are dismissed without prejudice. See *Southern Walk at Broadlands Homeowner's Ass'n v. OpenBand at Broadlands, LLC*, 713 F.3d 175, 185 (4th Cir. 2013) ("A suit dismissed for lack of jurisdiction cannot *also* be dismissed with prejudice" because a dismissal with prejudice is "a disposition on the merits, which only a court with jurisdiction may render." (quotation marks removed)). The judgment is affirmed in all other respects.

*SO ORDERED*

---

that as a separate argument before the district court. "[I]f a party wishes to preserve an argument for appeal, the party must press and not merely intimate the argument during the proceedings before the district court." *In re Under Seal*, 749 F.3d 276, 287 (4th Cir. 2014) (quotation marks removed).

21